**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

CHERYL ANNE DOPP,

Debtor.
_________________________________/

Case No. 26-18789-RAM
Chapter 13

**EXPEDITED MOTION (I) TO DISMISS CHAPTER 13 BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 1307(c) AS BAD FAITH FILING, (II) FOR ABSTENTION PURSUANT TO 28 U.S.C. § 1334, OR IN THE ALTERNATIVE (III) RELIEF FROM AUTOMATIC STAY**

Creditor, JEMISON FAMILY LIMITED PARTNERSHIP ("JFLP"), by undersigned counsel, pursuant to pursuant to 11 U.S.C. § 305(a)(1), § 1307(c), § 362(d) and 105(a), Federal Rules of Bankruptcy Procedure 1017, 2002, 9011 and 9014 11 U.S.C, Federal Rule of Bankruptcy Procedure 4001(a) and Local Rule 4001-1, respectfully requests that the Court enter an order dismissing this case as a bad faith filing or abstaining from this case under 11 U.S.C. § 305 and 28 U.S.C. § 1334, on an expedited basis, or in the alternative, to terminate or modify the automatic stay to allow JFLP to proceed in state court, and in support of this Motion states as follows:

## INTRODUCTION

This bankruptcy filing represents the latest chapter in Debtor Cheryl Dopp's continued pattern of abuse of the judicial system. For months, Dopp has plagued the trial court and JFLP in the Miami-Dade Circuit Court, in a case where JFLP is merely attempting to enforce a promissory note and establish and foreclose equitable mortgages that Dopp expressly and voluntarily gave to JFLP on her two investment properties in Miami.

Dopp's abusive conduct has included but is by no means limited to: (1) filing three frivolous motions to recuse the presiding judge, all of which were summarily denied; (2) filing an extraordinary writ of prohibition challenging those denials to the Third District Court of Appeal, which was also summarily denied; (3) abusing generative artificial intelligence, including filing hallucinated legal authorities; (4) submitting countless pleadings without legal or factual support; (5) making sworn statements directly contradicted by her own evidence; (6) continually making bad faith misrepresentations and *ad hominem* attacks on the presiding judge and JFLP's counsel; (7) filing meritless complaints against JFLP with the New Jersey Department of Banking and Insurance, the Florida Department of Financial Regulation, the Office of the Attorney General for Florida, the South Carolina State Board of Financial Institutions, the Office of the Attorney General for South Carolina, and the Consumer Financial Protection Bureau, none of which have resulted in any adverse action against JFLP; and (8) filing a complaint with the Florida Bar against JFLP's counsel, which was summarily dismissed.

In short, Dopp is the prototypical vexatious litigant, repeatedly attempting to delay, obstruct, and derail adjudication of JFLP's claims. Given that Dopp's misconduct before the trial court has never worked and only caused JFLP to incur substantial and unnecessary attorneys' fees and costs, Dopp has now invoked the Bankruptcy Code as yet another procedural mechanism to prevent JFLP from obtaining a determination of its prepetition property rights.

The timing and circumstances of this filing demonstrate that this case was not commenced to address a legitimate financial reorganization need, but rather as a litigation tactic designed to halt a substantially advanced state court proceeding. Dopp filed this bankruptcy case only after JFLP had prosecuted its state court claims for months, obtained numerous rulings in its favor, defeated Dopp's counterclaims, proceeded through discovery, and moved toward adjudication of

its equitable mortgage and breach of note claims arising from Dopp's express agreement to secure a $185,000 loan with her Florida real property. Dopp's conduct in the state court litigation was so egregious that JFLP sought relief in state court under Florida's vexatious litigant statute based upon Dopp's repeated filing of unmeritorious pleadings, improper litigation tactics, and conduct designed to impose delay, expense, and burden on both the court and opposing parties. This Court should not permit the bankruptcy process to become another forum for the continuation of the same conduct. The automatic stay is intended to preserve the orderly administration of bankruptcy estates, not to provide a debtor with an additional procedural vehicle to halt a substantially advanced state court proceeding whenever the outcome becomes unfavorable.

This case also presents compelling grounds for abstention. The dispute between JFLP and Dopp is fundamentally a Florida real property dispute governed by Florida law. The central issue is whether Dopp's written promise to repay the Note, coupled with her express agreement to pledge identified Florida real estate as collateral, created an enforceable equitable mortgage or equitable lien. The state court is already intimately familiar with these issues, having presided over months of litigation involving the same parties, the same Note, the same properties, and the same claims. The state court has addressed numerous motions, resolved significant procedural disputes, supervised discovery, and is the appropriate forum to liquidate and determine JFLP's state-law rights.

Allowing this dispute to proceed solely in bankruptcy court would unnecessarily duplicate judicial efforts, reward procedural delay, and permit a debtor to obtain a new forum for a dispute that was already pending and substantially developed before the petition date. JFLP does not seek to circumvent the Bankruptcy Code or obtain an improper advantage over the estate. JFLP seeks only limited relief to allow the state court to liquidate its claim and determine the existence,

validity, and extent of its equitable mortgage rights. Accordingly, this Court should dismiss this case as a bad faith filing pursuant to applicable provisions of the Bankruptcy Code, abstain pursuant to 11 U.S.C. § 305(a)(1) and 28 U.S.C. § 1334(c), or, in the alternative, modify the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit JFLP to proceed in state court. The bankruptcy process should not become another instrumentality through which Dopp delays adjudication of JFLP's prepetition property rights. Allowing such misconduct would only further encourage other vexatious litigants to abuse the bankruptcy process.

## JURISDICTION

1. On July 2, 2026 (the "Petition Date"), Cheryl Anne Dopp (the "Debtor"), commenced this case by filing a voluntary petition for relief under chapter 13 of the Bankruptcy Code.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. § 1307, 305(a), and 362.

## BACKGROUND

### I. JFLP's Loan and Security Interest on Properties Owned by the Debtor

4. On or about September 25, 2024, the Debtor executed a promissory note in favor of JFLP in the principal amount of $185,000.00 with an interest rate of twelve percent per annum and a maturity date of September 5, 2025 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

5. As part of the Note, the Debtor granted a security interest in the following real property owned by her, which served as collateral for the repayment of the Note: (1) 1800 N.

Bayshore Drive, Apt. 2407, Miami, Florida 33132 (the "North Bayshore Property"), (2) 291 Harrison Avenue, Jersey City, NJ 07304 (the "New Jersey Property"), and (3) 799 NE 70th Street, Miami, FL 33138 (the "NE 70th Street Property", collectively, the "Properties").

6. JFLP's security interest was expressly made subordinate to any existing mortgages, liens, or encumbrances on the properties that may have priority over JFLP's interest.

7. The Debtor breached the Note when she expressly advised JFLP that she was not going to repay the Note upon maturity and then, in fact, failed to repay the Note upon maturity.

## II. Pending State Court Litigation and Debtor's Pattern of Delay and Judicial Abuse

8. JFLP and the Debtor are parties to a consolidated state court case pending in Miami-Dade County, Florida, styled *PNC Bank, NA v. Cheryl Dopp*, et al., Case No. 2025-010456-CA-01 (the "State Court Action").

9. JFLP's claims against the Debtor include (1) a claim to establish and foreclose an equitable mortgage lien on the North Bayshore Property, (2) a claim to establish and foreclose an equitable mortgage lien on the NE 70th Street Property, (3) a claim for breach of the Note, and (4) a claim, in the alternative, for money lent.

10. Relatedly, on June 3, 2025, PNC Bank, NA ("PNC") filed a mortgage foreclosure action against the Debtor as to the North Bayshore Property. JFLP intervened as a defendant on December 4, 2025, and filed a Crossclaim against Dopp seeking establishment of and foreclosure on an equitable mortgage on the Property. PNC voluntarily dismissed its complaint on February 13, 2026, leaving only the crossclaim litigation between JFLP and Dopp. The State Court Action was thereafter consolidated with related litigation involving the NE 70th Street Property.

11. Throughout the State Court Action, the Debtor was intermittently represented by counsel and proceeded pro se at various times. For the months preceding the filing of this bankruptcy case, however, the Debtor represented herself in connection with JFLP's claims.

12. During the State Court Action, the Debtor engaged in a sustained pattern of litigation conduct designed to delay, obstruct, and frustrate adjudication of JFLP's claims. The Debtor repeatedly filed meritless motions, duplicative pleadings, and unsupported requests for relief, challenged adverse rulings through repeated procedural filings, sought disqualification of the presiding judge on three occasions, and ultimately pursued extraordinary appellate relief through a petition for writ of prohibition. A true and correct copy of the State Court Action dockets are attached hereto as **Composite Exhibit B.**

13. This conduct resulted in JFLP seeking relief under Florida's vexatious litigant statute, Fla. Stat. § 68.093. A true and correct copy of the Vexatious Litigant Motion is attached as **Exhibit C.**

14. The following is a non-exhaustive summary of Dopp's pattern of meritless and unsuccessful filings:

a. Motion to Disqualify/Recuse the Court (January 5, 2026)
b. Motion to Discharge Lis Pendens (January 28, 2026)
c. Replies Filed in Wrong Case (February 11, 2026)
d. Counterclaims (January 27, 2026)
e. Amended Counterclaims (February 17, 2026)
f. Motion to Transfer and Consolidate (February 22, 2026)
g. Motion for Protective Order (February 22, 2026)
h. Motion to Cancel Hearing (April 7, 2026)
i. Motion for Summary Judgment (April 16, 2026)
j. Motion for Order to Show Cause, Correct Record, and Sanctions (April 19, 2026)
k. Motion for Leave to File Second Amended Answer, Affirmative Defenses, Counterclaims, and Third-Party Complaint (April 26, 2026).
l. Notice of Objection to Hearing on Uniform Motion Calendar (April 29, 2026).
m. Memorandum of Law on JFLP's Motion to Consolidate Cases (April 30, 2026).
n. Notice of Case Management Issues Regarding Due Process, Adequate Hearing Time, and Fair Sequencing of Related Motions (May 1, 2026).

o. Notice of Homestead Status and Miscategorization of Case Type on the Docket (May 1, 2026).
p. Second Motion to Disqualify the Court (May 5, 2026).
q. Petition for Writ of Prohibition.

13. As a result, the presiding judge in the State Court Action has expended an extraordinary amount of time adjudicating these issues and is intimately familiar with the dispute and the parties. This extensive history demonstrates a consistent pattern: when faced with adverse rulings or the prospect of adjudication on the merits, Dopp has repeatedly employed procedural tactics to delay proceedings rather than address the substantive merits of JFLP's claim. The filing of this bankruptcy case represents a continuation of that same pattern.

14. The Debtor filed her chapter 13 case on July 2, 2026, just days prior to a special set hearing scheduled for July 6, 2026, on JFLP's Motion to Strike Defendant's, Cheryl Dopp, Answer, Affirmative Defenses and General Common Allegations to Consolidated Crossclaim.

## III. Debtor's Bankruptcy Case and Lack of Legitimate Purpose for Bankruptcy Filing

15. On July 2, 2026, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, commencing this case and invoking the automatic stay of the pending State Court Action.

16. On July 16, 2026, following a notice of deficiency, the Debtor filed amended schedules together with Official Form 122C-1, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period. The Debtor's amended schedules disclose total assets of $2,015,028.94, consisting primarily of two Florida investment properties with a combined scheduled value of $1,870,000.00 and personal property valued at $145,028.94. (Summary of Assets and Liabilities, Part 1; Schedule A/B, Lines 55-63.)

17. The Debtor schedules total liabilities of $1,278,409.87, consisting of $764,771.87 in secured debt and $513,638.00 in unsecured debt, exclusive of JFLP's disputed claim. (Summary of Assets and Liabilities, Part 2; Schedules D and E/F.)

18. The Debtor's bankruptcy filings contain internally inconsistent representations regarding her income. Schedule I reports monthly income of $7,752.00, while Official Form 122C-1 reports $0.00 in current monthly income during the six-month period preceding the petition date and annualized current monthly income of $0.00. (Schedule I, Line 12; Official Form 122C-1, Lines 11, 14, 15b, and 20b.)

19. Although the Debtor identifies both the North Bayshore Property and the NE 70th Street Property as “investment properties” on Schedule A/B, she reports no rental income from those properties on Official Form 122C-1, Line 6. Likewise, the Debtor answered “No” on Schedule G, Official Form 106G, indicating that she has no executory contracts or unexpired leases, including no disclosed rental agreements. Accordingly, the Debtor’s schedules do not identify any existing lease obligations, rental contracts, or other income-producing operations associated with the properties that would generate cash flow available to fund a Chapter 13 plan.

20. Contemporaneously, however, the Debtor claims the NE 70th Street Property as her exempt homestead. Specifically, on Schedule C, Official Form 106C, the Debtor identifies the property as “799 NE 70th Street, Miami, FL 33138,” references Schedule A/B Line 1.1, lists the current value of her ownership interest as $1,070,000.00, claims an exemption in the amount of $453,000.00, and identifies the statutory basis for the claimed exemption as “Fla. Const. art. X, § 4(a)(1); Fla. Stat. Ann. §§ 222.01 & 222.02.” Thus, while the Debtor contemporaneously characterizes the property as an “investment property” on Schedule A/B, she also claims the same property as her Florida constitutional homestead for exemption purposes on Schedule C. The

Debtor’s inconsistent classifications further underscore the need to reconcile the nature, use, and economic purpose of the property before a feasible Chapter 13 plan can be evaluated.

21. Regardless of which income disclosure is accepted, the Debtor’s own schedules demonstrate that she lacks sufficient income to fund a feasible Chapter 13 plan. Schedule J reflects monthly expenses of $9,125.66, exceeding the monthly income reported on Schedule I by approximately $1,373.66 before payment of any Chapter 13 plan obligations. Thus, even accepting the Debtor's Schedule I income as accurate, the Debtor reports negative monthly cash flow and no disposable income available to fund a plan. (Schedule I, Line 12; Schedule J, Line 22c.)

22. The Debtor lists JFLP's claim as disputed despite the pending State Court Action seeking enforcement of the Note and establishment of equitable mortgage rights arising from the Debtor's written agreement to pledge her real property as collateral. The timing of this bankruptcy filing, together with the Debtor’s financial disclosures and the procedural posture of the State Court Action, demonstrates that this case was filed not to accomplish a feasible financial reorganization, but to invoke the automatic stay and delay adjudication of JFLP's prepetition rights.

23. Moreover, the Debtor’s proposed Chapter 13 Plan further demonstrates that the case lacks a feasible reorganization purpose. The Plan requires monthly payments of $4,496.34 for months 7 through 60, while the Debtor’s own Schedule I and Schedule J disclose negative monthly cash flow of $1,373.66 before consideration of any Chapter 13 plan obligation. (Chapter 13 Plan, Section II.A; Schedule I, Line 12; Schedule J, Lines 22c and 23c.) The Debtor has not identified any current source of income sufficient to fund the proposed plan payments. Instead, the Debtor relies on anticipated future income from employment opportunities that she has not yet obtained. (Schedule I, Line 13; Schedule J, Line 24.)

24. The proposed Plan also seeks to maintain obligations secured by the Debtor's real properties while providing no treatment for JFLP's disputed claim. Specifically, the Plan proposes to maintain payments to PNC relating to the North Bayshore Property, Zions Bankcorp relating to the NE 70th Street Property, and other mortgage-related claims, while listing no treatment of JFLP's claim. (Chapter 13 Plan, Section III.A.) The Plan further identifies both properties as "Other Real Property," rather than a principal residence, confirming the Debtor's treatment of these properties as income-producing or investment assets for plan purposes. (Chapter 13 Plan, Section III.A.)

## RELIEF REQUESTED

### I. The Bankruptcy Case Should Be Dismissed as a Bad Faith Filing

25. Bankruptcy Code § 1325(a)(7) requires that a debtor's act of filing her petition be made in good faith. 11 U.S.C. § 1325(a)(7). Further, Bankruptcy Code § 1307(c) permits the court to dismiss a case "for cause." 11 U.S.C. § 1307(c). Courts interpret "cause" to include a lack of good faith when filing the bankruptcy petition. *In re Farber*, 355 B.R. 362, 366 (Bankr. S.D. Fla. 2006). Ultimately, a bankruptcy court has discretion as to whether to dismiss a chapter 13 case under § 1307(c). *In re Buis*, 337 B.R. 243, 253 (Bankr. N.D. Fla. 2006). Courts apply a "totality of the circumstances test" when determining whether a debtor has acted in bad faith. *In re McGovern*, 297 B.R. 650, 655–56 (S.D. Fla. 2003) ("[T]he filing of a chapter 13 petition in bad faith may constitute cause for dismissal under 11 U.S.C. § 1307(c)"). Courts review several factors as articulated in *In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983), in making the determination that a petition was filed in good faith. *See In re Brown*, 742 F.3d 1309, 1317 (11th Cir. 2014) ("These same Kitchens factors for subsection (a)(3) are equally relevant to determining whether a petition was filed in good faith under subsection (a)(7)."). Under the Eleventh Circuit's "totality of

circumstances" approach outlined in *Kitchens*, the relevant criteria for evaluating "good faith" in a Chapter 13 proceeding include, among others: (1) the debtor's income from all sources; (2) the debtor's living expenses; (3) the debtor's motivation and sincerity in seeking Chapter 13 relief; (4) the debtor's degree of effort; (5) the debtor's ability to earn income and likelihood of fluctuations in earning capacity; (6) the circumstances surrounding the debtor's debts and dealings with creditors; (7) the accuracy of the debtor's statements of debts and expenses; and (8) whether inaccuracies appear intended to mislead the Court.

26. While some code provisions have superseded the *Kitchen* factors when examining good faith of a proposed plan, courts still routinely rely on these factors in determining whether to dismiss. *Bunyan v. Remick*, No. 8:18-BK-1250-RCT, 2019 WL 4805428, at *3–4 (M.D. Fla. Oct. 1, 2019) (noting Kitchen factors application). "[A] Chapter 13 'good faith' analysis still properly entails examination of the type of underlying debt, the circumstances surrounding its creation, and any pre-petition conduct of the debtor aimed at avoiding or thwarting the debt, especially as these factors may circumstantially reflect the debtor's motivation, and ultimately his 'good faith,' in filing under Chapter 13." *In re McGovern*, 297 B.R. 650, 658 (S.D. Fla. 2003).

27. Here, the totality of the circumstances demonstrates that the Debtor's petition was filed primarily as a litigation tactic to delay JFLP's enforcement of its state-law rights, rather than as a legitimate effort to reorganize through a feasible Chapter 13 plan. The instant petition is the latest part of Debtor's pattern of abusing the judicial system as part of a scheme to hinder or delay JFLP in its enforcement efforts. *See In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986) ("Whenever a Chapter 13 petition appears to be tainted by a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the Debtor's motives.").

28. First, the Debtor's own schedules demonstrate that she lacks the income necessary to fund a Chapter 13 plan. The Debtor filed Official Form 122C-1 reporting $0.00 in total average monthly income for the six-month period preceding the bankruptcy filing and $0.00 in annualized current monthly income. (Official Form 122C-1, Lines 11, 14, 15b, and 20b.) In contrast, Schedule I reports monthly income of $7,752.00, derived entirely from "net income from rental property and from operating a business, profession, or farm." (Schedule I, Lines 8a, 9, and 12.) Even accepting the higher Schedule I figure, the Debtor's Schedule J reflects monthly expenses of $9,125.66, resulting in negative monthly net income of ($1,373.66) before any Chapter 13 plan payment. (Schedule J, Lines 22c and 23c.) These disclosures demonstrate that the Debtor has no present disposable income available to fund a Chapter 13 plan.

29. Second, the Debtor's income disclosures are internally inconsistent and raise substantial questions concerning the accuracy of her financial disclosures. Schedule I identifies $7,752.00 in monthly rental/business income, but Official Form 122C-1 reports no income from rental or other real property. (Schedule I, Line 8a; Official Form 122C-1, Line 6.) Although the Debtor identifies the North Bayshore Property and the NE 70th Street Property as investment properties on Schedule A/B, she reports no rental income on Form 122C-1 and discloses no executory leases or unexpired rental agreements on Schedule G. (Schedule A/B, Lines 55–63; Official Form 122C-1, Line 6; Schedule G, Question 1.) These inconsistencies prevent creditors and the Court from determining whether the properties actually generate income sufficient to support a Chapter 13 plan.

30. Third, the Debtor's treatment of the NE 70th Street Property further demonstrates inconsistencies in her characterization of her assets. On Schedule A/B, the Debtor identifies the property as an investment property. (Schedule A/B, Lines 55–63.) However, contemporaneously

on Schedule C, the Debtor claims the same property as exempt homestead, identifying the property as "799 NE 70th Street, Miami, FL 33138," referencing Schedule A/B Line 1.1, listing a current value of $1,070,000.00, claiming a $453,000.00 exemption, and citing Fla. Const. art. X, § 4(a)(1) and Fla. Stat. §§ 222.01 and 222.02 as the basis for exemption. (Schedule C, Part 1, Property Description; Schedule C, Exemption Amount and Statutory Basis.) While a property may have multiple legal characterizations depending on context, the Debtor's simultaneous characterization of the property as both an income-producing investment property and exempt homestead requires reconciliation, particularly where the Debtor relies on rental income to support Schedule I while reporting no rental income on Form 122C-1.

31. Fourth, the Debtor's schedules reveal substantial assets, yet she proposes no realistic mechanism by which creditors will receive meaningful payments through Chapter 13. The amended schedules disclose total assets of $2,015,028.94, including approximately $1,870,000.00 in real property and $145,028.94 in personal property. (Summary of Assets and Liabilities, Part 1; Schedule A/B, Lines 55–63.) The Debtor simultaneously reports total liabilities of $1,278,409.87, consisting of $764,771.87 in secured debt and $513,638.00 in unsecured debt, excluding JFLP's disputed claim. (Summary of Assets and Liabilities, Part 2; Schedules D and E/F.) Despite substantial scheduled assets, the Debtor's own income and expense disclosures demonstrate an inability to make plan payments.

32. Fifth, the timing and circumstances surrounding the filing support a finding of bad faith. The Debtor filed bankruptcy while JFLP's State Court Action was pending and while JFLP sought enforcement of its Note and equitable mortgage rights arising from the Debtor's written agreement to pledge real property as collateral. (Schedule E/F, JFLP claim designation; State Court Action allegations.) The filing occurred after JFLP pursued enforcement remedies and had the

practical effect of invoking the automatic stay to halt those proceedings. The Eleventh Circuit has recognized that when a Chapter 13 petition appears to have been filed for a questionable purpose, bankruptcy courts must examine the debtor's motives. *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986).

33. Courts may also consider several additional factors when determining whether to dismiss a debtor's bankruptcy for bad faith such as "the nature of debt,...the timing of the petition; how the debt arose and the debtor's motive in filing the bankruptcy petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the [d]ebtor had been forthcoming with the bankruptcy court and creditors." *In re Graffy*, 216 B.R. 888, 891 (Bankr. M.D. Fla. 1998).

34. Here, the Debtor's inconsistent income disclosures, lack of demonstrated plan funding ability, substantial contingent litigation claims, and timing of the filing in relation to JFLP's enforcement efforts establish that this case was filed primarily to delay JFLP's collection efforts rather than to achieve a legitimate Chapter 13 reorganization.

35. Moreover, the Debtor's own schedules further demonstrate that this case lacks any realistic prospect of reorganization. Although Schedule I reports monthly income of $7,752.00, that income is insufficient to satisfy the Debtor's disclosed monthly expenses of $9,125.66, resulting in negative monthly net income of ($1,373.66) before any Chapter 13 plan payment. (Schedule I, Lines 8a, 9, and 12; Schedule J, Lines 22c and 23c.) Worse still, the Debtor's income disclosures are internally inconsistent, as Official Form 122C-1 reports $0.00 in current monthly income during the applicable six-month lookback period. (Official Form 122C-1, Lines 11, 14, 15b, and 20b.) These disclosures demonstrate that the Debtor has not identified a reliable source of disposable income from which to fund a Chapter 13 plan, further supporting the conclusion that

this filing was made primarily to obtain the protection of the automatic stay and delay JFLP's enforcement efforts rather than to accomplish a feasible reorganization.

36. Accordingly, based on the totality of the circumstances, dismissal for cause under 11 U.S.C. § 1307(c) is warranted.

## II. ALTERNATIVELY, THE COURT SHOULD ABSTAIN UNDER 11 U.S.C. § 305(a)(1) AND 28 U.S.C. § 1334(c)

37. The district court, pursuant to 28 U.S.C. § 1334, has exclusive jurisdiction over every case commenced under the Bankruptcy Code. In turn, that jurisdiction is referred to the bankruptcy courts pursuant to 28 U.S.C. § 157 and each district's standing order of reference. A bankruptcy court, however, need not exercise its exclusive jurisdiction over every case commenced under the Bankruptcy Code. Indeed, section 305 of the Bankruptcy Code explicitly provides for a mechanism to abstain from exercising jurisdiction in cases commenced under the Bankruptcy Code. It states, in pertinent part: Section 305. Abstention. (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if- (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; 11 U.S.C. § 305(a)(1).

38. Generally, when courts examine whether dismissal is appropriate under section 305(a)(1), they consider the following factors: 1) the economy and efficiency of administration; 2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; 3) whether federal proceedings are necessary to reach a just and equitable solution; 4) whether there is an alternative means of achieving an equitable distribution of assets; 5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; 6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh

with the federal bankruptcy process; and 7) the purpose for which bankruptcy jurisdiction is sought. *See In re Marciano*, 446 B.R. 407, 433 (Bankr. C.D. Cal. 2010) (citing *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464-65 (Bankr. S.D.N.Y. 2008)); *see also In re C & C Development Group, LLC*, Case No. 11-32362-BKC-AJC, 2012 WL 1865422 (Bankr. S.D. Fla. May 22, 2012) (Cristol, J.) (abstaining from exercising jurisdiction over bankruptcy case).

39. Here, the interests of both the Debtor and creditors would be better served by dismissal or abstention because the primary dispute underlying this bankruptcy filing is already pending before the state court. JFLP's State Court Action seeks enforcement of the Note and adjudication of its claimed equitable mortgage rights arising from the Debtor's written agreement to pledge her real property as collateral. The issues concerning the validity, enforceability, and priority of JFLP's claimed interest in the Debtor's real property are matters already before the state court.

40. Abstention is further appropriate because the bankruptcy case does not present a meaningful reorganization proceeding requiring federal bankruptcy administration. As noted above, the Debtor's schedules reflect that she lacks sufficient income to fund a Chapter 13 plan. Specifically, Schedule I reports monthly income of $7,752.00, while Schedule J reports monthly expenses of $9,125.66, resulting in negative monthly cash flow of $1,373.66 before any Chapter 13 plan payment. (Schedule I, Line 12; Schedule J, Lines 22c and 23c.) The Debtor's own disclosures therefore demonstrate that continued administration of this Chapter 13 case will not result in a feasible repayment structure.

41. The bankruptcy filing also does not provide an efficient forum for resolution of the parties' dispute. The Debtor's schedules identify substantial real property holdings, including the NE 70th Street Property, which she simultaneously identifies as an investment property on

Schedule A/B and claims as exempt homestead on Schedule C. (Schedule A/B, Line 1.1; Schedule C.) The central dispute concerns the rights and remedies associated with those properties and JFLP's alleged secured claim, issues that are already pending before the state court.

42. Finally, the circumstances surrounding the filing demonstrate that bankruptcy jurisdiction is being invoked primarily in response to JFLP's enforcement efforts rather than to accomplish a feasible reorganization. The timing of the petition, the pending State Court Action, the Debtor's inability to demonstrate positive monthly cash flow, and the absence of disclosed rental agreements or income-producing operations weigh in favor of abstention. Under these circumstances, dismissal or suspension of this bankruptcy case would better serve the interests of the Debtor and creditors by allowing the parties to continue resolution of the underlying dispute in the existing state court forum.

## III. IN THE ALTERNATIVE, JFLP IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

43. JFLP requests entry of an order under 11 U.S.C. § 362(d)(1) lifting the automatic to pursue its *in rem* rights against the Properties. Section 362(d)(1) provides that "the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause . . . ." When deciding whether there is cause to grant relief from automatic stay, "courts look to the totality of the circumstances." *In re Gaime*, 17 F.4th 1349, 1355 (11th Cir. 2021); *see also In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006) ("Whether cause exists to grant stay relief must be determined on a case-bycase basis."). The moving party "has the initial burden to show that 'cause' exists," but "the party opposing the stay relief has the ultimate burden of disproving the existence of 'cause.'" *In re R. J. Groover Constr., LLC*, 411 B.R. 473, 477 (Bankr. S.D. Ga. 2008). In determining whether to lift the automatic stay, "courts have generally

considered the prejudice to the debtor's reorganization efforts, conservation of judicial resources, and prejudice to the movant." *In re Murray Indus., Inc.*, 121 B.R. 635, 637 (Bankr. M.D. Fla.1990).

44. While § 362 does not define what constitutes "cause", courts have interpreted § 362(d)(1) to include "a wide range of circumstances constituting 'cause' for stay relief." *In re Bryan Road, LLC*, 382 B.R. 844, 854 (Bankr. S.D. Fla. 2008) (citing *In re Dixie Broad.*, 871 F.2d 1023, 1026 (11th Cir. 1989)). Courts look to the totality of the circumstances in each particular case when determining whether to grant stay relief. *Id*. "The totality of the circumstances includes how the parties have conducted themselves, the debtor's motives and whether the debtor has acted in good faith." *In re Lamelas*, Case No. 12-26067-AJC, 2013 WL 324028, *2 (Bankr. S.D. Fla. Jan. 28, 2013) (citing *In re Mack,* 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006)).

45. For instance, "cause" can exist to lift the automatic stay when a debtor fails to propose a feasible chapter plan of reorganization within a reasonable amount of time. *See Centofante v. CBJ Dev. (In re CBJ Dev.),* 202 B.R. 467, 473 (9th Cir. BAP 1996) ("That a Debtor is unable to propose a feasible plan, may be grounds for relief from the automatic stay for 'cause' under § 362(d)(1)."); *In re Gundrum,* 509 B.R. 155, 163 (Bankr. S.D. Ohio 2014) ("Cause under § 362(d)(1) is not limited to a lack of adequate protection or a finding of bad faith and can exist when a debtor fails to propose a feasible plan."); *In re Smith,* 333 B.R. 94, 102 (Bankr. M.D. N.C. 2005) (citing *In re Brown*, No. 96-30290, 1998 WL 734701, at *5 (E.D. Pa. Oct. 15, 1998) ("Appellant could not propose a feasible reorganization plan to the satisfaction of the Bankruptcy Court. Thus, this Court cannot conclude that the Bankruptcy Court abused its discretion in concluding that cause existed to grant a relief from the stay...").

46. In this case, the facts and circumstances warrant relief from the automatic stay because the Debtor has not demonstrated the ability to fund a feasible Chapter 13 plan. The

Debtor's proposed Chapter 13 Plan requires payments of $4,496.34 per month for months 7 through 60. (Chapter 13 Plan, Section II.A.) However, the Debtor's own schedules reflect that she does not presently have sufficient income to fund those obligations. Schedule I reports monthly income of $7,752.00, while Schedule J reports monthly expenses of $9,125.66, resulting in negative monthly cash flow of $1,373.66 before consideration of any Chapter 13 plan payment. (Schedule I, Line 12; Schedule J, Lines 22c and 23c.) The proposed Plan therefore depends upon anticipated future employment opportunities rather than presently available income. (Schedule I, Line 13; Schedule J, Line 24.)

47. Continued maintenance of the automatic stay would substantially prejudice JFLP by preventing it from pursuing its state-law remedies concerning the Properties while the Debtor retains possession and control of substantial real estate assets. The proposed Plan seeks to maintain obligations secured by the Debtor's real properties, including the North Bayshore Property and the NE 70th Street Property, while providing no treatment for JFLP's disputed claim. (Chapter 13 Plan, Section III.A.) The stay therefore operates to delay resolution of JFLP's claimed rights without a demonstrated likelihood that the bankruptcy case will result in a feasible adjustment of debts.

48. At a minimum, this Court should grant relief from the automatic stay to permit the pending State Court Action to proceed so that the state court may determine JFLP's claimed equitable lien rights and liquidate JFLP's claim. Under § 362(d)(1), "cause" encompasses providing relief from the automatic stay to relinquish jurisdiction to allow a claim to be liquidated in state court when the relief sought relates to a money judgment, including punitive damages. *In re Mark Jay Kaufman, P.A.*, 78 B.R. 309, 310, 311 (Bankr. N.D. Fla 1987) (discussing that a bankruptcy court cannot conduct a jury trial on state court issues, resulting in relief from the

automatic stay to allow movant to liquidate its claims in state court); *In re Makarewicz*, 121 B.R. 262, 264 (Bankr. S.D. Fla. 1990) ("[A] review of the legislative history of Section 362 of the Bankruptcy Code evidences congress' intent that the automatic stay be lifted in circumstances where it would be more appropriate to permit proceedings to continue in their original place of origin when no great prejudice to the bankruptcy estate will result.").

49. Here, the State Court Action predates the bankruptcy filing and involves issues concerning the existence, validity, and enforcement of JFLP's claimed interest in the Debtor's real property. Allowing that proceeding to continue will promote judicial economy, permit the appropriate forum to resolve state-law issues, and prevent the automatic stay from being used as an indefinite bar to JFLP's enforcement rights.

50. Therefore, JFLP is entitled to relief from the automatic stay under 11 U.S.C. §§ 362(d)(1). JFLP requests that any order entered granting this Motion be effective immediately upon entry of said order, and that the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3) be waived.

## **CONCLUSION**

WHEREFORE, Movant requests the Court enter an order (i) granting the motion to dismiss, and/or abstaining alternative, or in the alternative, (ii) modifying and terminating the automatic stay to permit Movant to exercise all of its statutory and contractual *in rem* rights and remedies, including continuing and proceeding in the State Court Action, (iii) waiving the 14-day stay of an Order granting this Motion for Relief pursuant to Bankruptcy Rule 4001(a)(3), and (iii) for such other and further relief as the Court deems appropriate.

*/s/ Dana L. Robbins-Boehner*
Dana L. Robbins-Boehner, Esq.
Florida Bar No. 106626
BURR & FORMAN LLP

201 North Franklin Street
Suite 3200
Tampa, Florida 33602
813.221.2626 (telephone)
813.221.7335 (facsimile)
Primary Email: drobbins-boehner@burr.com
Secondary Email: mguerra@burr.com and kkearney@burr.com
*Attorneys for Jemison Family Limited Partnership*

**CERTIFICATE OF SERVICE**

I HEREBY certify that on this 21st day of July, 2026, a true and correct copy of the foregoing has been furnished by either CM/ECF to all parties receiving CM/ECF service in this case (including Counsel for Debtor and the Chapter 13 Trustee), and via U.S. Mail to the Debtor, Cheryl Ann Dopp, 799 NE 70th Street, Miami, FL 33138 and those parties listed on the attached creditor matrix.

*/s/ Dana L. Robbins-Boehner*
Attorney

Label Matrix for local noticing
113C-1
Case 26-18789-RAM
Southern District of Florida
Miami
Tue Jul 21 14:35:36 EDT 2026

Federal Home Loan Mortgage Corporation
Robertson, Anschutz, Schneid, Crane
13010 Morris Road, Suite 450
Alpharetta, GA 30004-2001

Jemison Family Limited Partnership
c/o Dana Robbins-Boehner, Esq.
201 N. Franklin Street
Suite 3200
Tampa, FL 33602-5872

NewRez LLC
c/o McCalla Raymer Leibert Pierce, LLP
Bankruptcy Department
110 S.E. 6th Street Suite 2300
Fort Lauderdale, FL 33301-5055

PNC Bank, N.A.
Aldridge Pite, LLP
3525 Piedmont Road, N.E.
Suite 700
Atlanta, GA 30305-1608

1800 Club Condo Association
C/O Miami Management.
1800 N Bayshore Dr
Floor 2
Miami, FL 33132-3250

CJSD I Angela Drive Trust
C/O Trustee Dawn Colket
93 Rossiter Ave
Phoenixville, PA 19460-2509

Citibank NA
Bankruptcy Department
PO Box 6500
Sioux Falls SD 57117-6500

City of Miami Water and Sewer
3500 Pan American Dr
Miami FL 33133-5504

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia PA 19101-7346

JFLP - Jemison Family LP
C/O Brian Milker, Beach Connection, LLC
409 Cassian Way
Myrtle Beach,-South Carolina 29588-8740

JPMCB Card Services
PO Box 15369
Wilmington DE 19850-5369

LVNV Funding LLC
PO Box 10497
Greenville SC 29603-0497

Marcadis Singer PA
c/o Truist Bank Business
501 S Dakota Ave
Tampa FL 33606-2579

Miami Dade Tax Collector
Miami-Dade County Tax Collector- Bankrup
N,W. Second Avenue,
Suite 430
Miami, FL 33128

(p)STATE OF NEW JERSEY DIVISION OF TAXATION
ATTN BANKRUPTCY UNIT
PO BOX 245
TRENTON NJ 08695-0245

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

(p)PNC BANK RETAIL LENDING
P O BOX 94982
CLEVELAND OH 44101-4982

Renew Financial Group LLC
55~ 12th St, Suite 1650
Oakland, CA 94607

Shellpoint Mortgage Servicing
55 Beattie Pl Ste 600
Greenville SC 29601-2165

Truist Bank
c/o Credit Bureau Services
PO Box 849
Wilson NC 27894-0849

(p)US DEPARTMENT OF HOUSING AND URBAN DEVELOP
ATTN ROBERT ZAYAC
40 MARIETTA ST SUITE 300
ATLANTA GA 30303-2812

Verizon Wireless
PO Box 650051
Dallas TX 75265-0051

Visual Productions Group, LLC
7611 Coquina Dr.,
North Bay Village, FL 33141-4026

Cheryl Anne Dopp
8045 Leeburg Pike, Suite 510
tyson, FL 33138

Jaitegh Singh
701 Brickell Ave
Suite 1550
Miami, FL 33131-2824

Nancy K. Neidich
www.ch13miami.com
POB 279806
Miramar, FL 33027-9806

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

NJ Division of Taxation
Bankruptcy Section
PO Box 245
Trenton NJ 08695-0245

PNC Mortgage
PO Box 8703
Dayton OH 45401-8703

U.S. Department of Housing and Urban Develop
77 Forsyth Street SW
Atlanta, GA 30303

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

(u)Florida PACE Program/ Florida PACE Funding
Physical: 6650 Professional Pkwy STE 102
Mailing: 4411 Bee Ridge Rd #134, Sa

| | |
|---|---|
| End of Label Matrix | |
| Mailable recipients | 26 |
| Bypassed recipients | 2 |
| Total | 28 |

# EXHIBIT A

**PROMISSORY NOTE**

Cheryl Dopp Miami-Dade,
FL
Dated: September 25, 2024 (the "Effective Date")
Principal – USD$185,000.00
Interest – 12% per year

FOR VALUE RECEIVED, Cheryl Dopp, an individual (the "**Maker**"), promises to pay, on the terms and subject to the conditions described in this Promissory Note (this "**Note**"), to Jemison Family Limited Partnership (the "**Payee**"), at such address as Payee may from time to time direct, the principal sum of ONE HUNDRED EIGHTY-FIVE THOUSAND AND 00/100 DOLLARS (USD$185,000.00) with interest thereon at twelve percent (12%) per annum, accruing from the date the principal sum funds are disbursed.

From the principal balance of $185,000.00:

- A non-refundable Origination Fee of $3,700.00 will be disbursed directly to Payee by Payee on the Effective Date, and
- A non-refundable Origination Fee of $5,550.00 will be disbursed directly to All Loans Funding LLC by Payee on the Effective Date, and
- The remaining principal balance of $175,750.00 will be disbursed to Maker by Payee on the Effective Date.

The principal balance of $185,000.00 will accrue interest at an annual rate of twelve percent (12%) starting on the date the funds are disbursed. Commencing on October 25, 2024 and continuing on the same day of each calendar month thereafter for twelve (12) months, Maker shall make monthly payments of interest only. The outstanding Principal balance of ONE HUNDRED EIGHTY-FIVE THOUSAND AND 00/100 DOLLARS (USD$185,000.00) under this Note, and all accrued and unpaid interest thereon, and any other amounts then due and owing under this Note, shall be payable on September 25, 2025 (the "Maturity Date"). Payments due on a weekend or federally recognized holiday shall be made on the following business day.

To secure the payment and performance of this Note, Maker grants a security interest in the following properties owned by Maker, which shall serve as collateral for the repayment of this Note (collectively, the "**Collateral**"):

- 1800 N. Bayshore Drive, Unit 2407, Miami, FL 33132
- 291 Harrison Avenue, Jersey City, NJ 07304
- 799 NE 70yh Street, Miami, FL 33138

The security interest is subordinate to any existing mortgages, liens or encumbrances on the Collateral that may have priority over the Payee's security interest.

Maker may prepay all or any portion of this Note at any time without premium or penalty. All payments hereunder shall be applied first to charges of collection incurred by Payee, next to interest accrued and unpaid and finally to the reduction of principal. Any payment hereunder that would otherwise be due on a Saturday, Sunday, or a day upon which the banks in Miami, Florida,

are otherwise closed shall instead be due on the next business day upon which the banks in such location are open.

An "**Event of Default**" shall occur if: (i) the Maker shall default in the payment of any amount of principal or interest owing hereunder following written notice of such default from Payee and the failure on the part of Maker to remedy such default (whether on maturity, acceleration or otherwise) within ten (10) business days of Maker's receipt of such written notice; (ii) an involuntary proceeding shall be commenced or a voluntary petition shall be filed in a court of competent jurisdiction seeking (A) relief in respect of the Maker or of a substantial part of his respective properties or assets, under Title 11 of the United States Code, as now constituted or hereafter amended, or any other Federal or state bankruptcy, insolvency, receivership or similar law, or (B) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for the Maker, or for a substantial part of his respective properties or assets; and such proceeding or petition shall continue undismissed for sixty (60) days, or an order or decree approving or ordering any of the foregoing shall be entered; or (iii) a default, breach or violation in the observance or performance of any covenant or agreement of the Maker contained in this Note shall have occurred and shall not have been cured within thirty (30) days after the Maker receives written notice thereof from the Payee.

Upon the occurrence of an Event of Default (whether on maturity, acceleration or otherwise) and only while such Event of Default is continuing, the unpaid principal amount hereof shall bear interest computed at an annual rate equal to eight percent (8%) per annum in excess of the interest rate otherwise provided hereunder (the "**Default Rate**"). Upon the occurrence of any Event of Default, Payee may, after written notice of thirty (30) additional days to Maker and Maker's failure to cure same, declare the entire unpaid principal and accrued interest hereunder to be forthwith due and payable, without further notice or demand of any kind.

Should the indebtedness represented by this Note or any part thereof be collected at law, in equity, or in bankruptcy, receivership or other court proceedings or this Note be placed in the hands of attorneys for collection after default, the Maker agrees to pay hereunder, in addition to the principal and interest due and payable hereon, reasonable attorneys' fees, court costs and other reasonable collection expenses incurred by Payee. Without limiting the foregoing, Maker agrees to pay Payee all out-of-pocket costs and expenses actually incurred by or on behalf of Payee following and during the continuation of any Event of Default in connection with the collection and enforcement of this Note. Notwithstanding the above, if any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which such party may be entitled.

Unless otherwise required upon an Event of Default, the Maker and all endorsers, guarantors, sureties and other persons and other entities who may become liable for all or any part of this Note hereby severally waive presentment for payment, demand, notice of nonpayment, and protest. Such persons consent to any extension of time (whether one or more) with respect to payment hereof or release of any person or any entity liable for the payment of this Note. Any such extension or any such release may be made without notice to any such person or entity and without discharging any liability of such person or such entity hereunder. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

No amendment of any provision of this Note shall be effective, unless the same shall be in writing and signed by Maker and Payee. Except as otherwise expressly set forth herein, any failure of Maker to comply with any provision hereof may only be waived in writing by Payee, and any failure of Payee to comply with any provision hereof may only be waived in writing by Maker. No such waiver shall operate as a waiver of, or estoppel with respect to, any subsequent or other failure. No failure by any party to take any action against any breach of this Note or default by any other party shall constitute a waiver of such party's right to enforce any provision hereof or to take any such action.

All the covenants, stipulations, promises, and agreements contained in this Note by or on behalf of the parties shall bind their successors and assigns, whether so expressed or not.

The Maker shall be liable for any and all stamp taxes and similar amounts due in the issuance of this Note, if any.

THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, AND THE RIGHTS AND THE OBLIGATIONS HEREUNDER SHALL BE REGULATED BY THE LAWS OF THE STATE OF FLORIDA, NOTWITHSTANDING THAT THE MAKER, PAYEE, OR ANY OTHER PARTY IDENTIFIED HEREIN MAY NOW OR AT ANY FUTURE TIME MAINTAIN AN OFFICE ELSEWHERE.

MAKER IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE.

IN WITNESS WHEREOF, the Maker has executed this Promissory Note as of the date previously indicated.

**Maker: Cheryl Dopp**

Signed: Cheryl Anne Dopp
By: Cheryl Dopp
Date: 09/25/2024

**DESCRIPTION OF ATTACHED DOCUMENT**

Title or Type of Document: Jurat ( Promissory Note ) ____________________

Document Date: 09/25/2024 ____________

Number of Pages (including notarial certificate): 5 __________

MERCEDEZ G ROBINSON
Notary Public - State of Florida
Commission # HH 83897
Expires on December 13, 2024

State of Florida

County of Miami-Dade

Sworn to (or affirmed) and subscribed before me by means of online notarization, this 09/25/2024 by Cheryl Anne Dopp.

Mercedez G Robinson

___ Personally Known OR ___ Produced Identification

Type of Identification Produced ✓

**Provided State ID**

# COMPOSITE EXHIBIT B

## Case Information

**Local Case Number:** 2025-010456-CA-01
**State Case Number:** 132025CA01045601GE01
**Case Style:** Pnc Bank National Association vs Cheryl A Dopp et al
**Filing Date:** 06/03/2025
**Judicial Section:** CA09 - Downtown Miami - Judge Cynamon, Abby
**Case Status:** OPEN
**Case Type:** RPMF -Non-Homestead
**Consolidated Case No.:**

## Related Cases

**Case Number:** 2025-021801-CA-01
**Filing Date:** 11/04/2025
**Case Type:** RPMF -Non-Homestead

## Hearing Details

**Hearing Date:** 07/06/2026 **Hearing Time:** 9:30AM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 06/17/2026 **Hearing Time:** 1:30PM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 06/15/2026 **Hearing Time:** 10:30AM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 06/12/2026 **Hearing Time:** 10:00AM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 05/18/2026 **Hearing Time:** 10:00AM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 05/12/2026 **Hearing Time:** 10:30AM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 05/08/2026 **Hearing Time:** 3:30PM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 05/07/2026 **Hearing Time:** 9:30AM **Hearing Code:** MOTCAL
**Description:** Motion Calendar **Hearing Location:**

**Hearing Date:** 05/06/2026 **Hearing Time:** 9:30AM **Hearing Code:** MOTCAL
**Description:** Motion Calendar **Hearing Location:**

**Hearing Date:** 04/29/2026 **Hearing Time:** 9:30AM **Hearing Code:** MOTCAL
**Description:** Motion Calendar **Hearing Location:**

**Hearing Date:** 04/28/2026 **Hearing Time:** 10:45AM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 04/15/2026 **Hearing Time:** 9:30AM **Hearing Code:** MOTCAL
**Description:** Motion Calendar **Hearing Location:**

**Hearing Date:** 04/08/2026 **Hearing Time:** 9:30AM **Hearing Code:** MOTCAL
**Description:** Motion Calendar **Hearing Location:**

**Hearing Date:** 04/02/2026 **Hearing Time:** 9:30AM **Hearing Code:** MOTCAL
**Description:** Motion Calendar **Hearing Location:**

**Hearing Date:** 03/18/2026 **Hearing Time:** 9:30AM **Hearing Code:** TRAN

**Description:** Transfer Calendar **Hearing Location:**

**Hearing Date:** 02/19/2026 **Hearing Time:** 11:00AM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 12/03/2025 **Hearing Time:** 1:30PM **Hearing Code:** SPECSETS
**Description:** Special Sets **Hearing Location:**

**Hearing Date:** 10/28/2025 **Hearing Time:** 9:00AM **Hearing Code:** MOTCAL
**Description:** Motion Calendar **Hearing Location:**

## Parties

| Party Description | Party Name | Attorney Information | Other Attorney(s) |
|---|---|---|---|
| Plaintiff | Pnc Bank National Association | **B#:** 92171<br>Yousuf, Mehwish A | **B#:** 100194 Kelley L Church, |
| Defendant | Dopp, Cheryl A | | **B#:** 166472 Cotzen, Michael L |
| Defendant AKA | Dopp, Cheryl | **B#:** 166472<br>Cotzen, Michael L | |
| Defendant | United States Of America, Department Of Treasury-I | | |
| Defendant | 1800 Club Condominium Association, Inc. | **B#:** 54006<br>Gregory R Elder (esq) | |
| Defendant | 1800 Club Master Association, Inc. | **B#:** 54006<br>Gregory R Elder (esq) | |
| Defendant | Jemison Family Limited Partnership (JFLP) | **B#:** 328758<br>Litow, Laurence S | |
| Cross Claimant | JEMISON FAMILY LIMITED PARTNERSHIP | | |
| Defendant | DOPP (CROSSCLAIM DEFENDANT), CHERYL | | |

## Dockets

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | 07/06/2026 | | Special Sets | Hearing | CROSSCLAIM PLAINTIFF S, JEMISON FAMILY LIMITED PARTNERSHIP, MOTION TO STRIKE DEFENDANT S, CHERY DOPP, ANSWER, AFFIRMATIVE DEFENSES AND GENERAL COMMON ALLEGATIONS TO CONSOLIDATED CROSSCLAIM |
| 240 | 07/02/2026 | | Notice of Filing: | Event | NOTICE OF BANKRUPTCY CASE FILING AND SUGGESTION OF AUTOMATIC STAY |
| 239 | 07/01/2026 | | Motion to Strike | Event | |
| 238 | 07/01/2026 | | Motion for Protective Order | Event | |
| 237 | 06/23/2026 | | Notice: | Event | jemison Family's |
| 236 | 06/23/2026 | | Notice of Hearing- | Event | 07/06/2026 AT 9:30 AM |
| 235 | 06/22/2026 | | Notice of Taking Deposition | Event | |
| 234 | 06/22/2026 | | Notice of Taking Deposition | Event | |
| 233 | 06/17/2026 | | Order: | Event | GRANTING CROSS-PLAINTIFFS MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS |
| | 06/17/2026 | | Special Sets | Hearing | CROSSCLAIM PLAINTIFF S, JEMISON FAMILY LIMITED PARTNERSHIP, MOTION TO DISMISS CROSSCLAIM DEFENDANT S, CHERYL DOPP, SECOND AMENDED COUNTERCLAIMS |
| | 06/15/2026 | | Special Sets | Hearing | CROSSCLAIM PLAINTIFF'S, JEMISON FAMILY LIMITED PARTNERSHIP, MOTION FOR ORDER TO SHOW CAUSE |
| | 06/12/2026 | | Special Sets | Hearing | Motion for Summary Judgment |
| 232 | 06/10/2026 | | Notice of Hearing- | Event | 06/17/2026 AT 1:30 PM |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 231 | 06/09/2026 | | Notice of Cancellation of Deposition | Event | |
| 230 | 06/08/2026 | | Reply to Affirmative Defenses | Event | |
| 229 | 06/04/2026 | | Motion to Strike | Event | |
| 228 | 06/03/2026 | | Order Extending Time for | Event | RESPOND TO FIRST REQUEST FOR PRODCUCTION |
| 227 | 06/02/2026 | | Response to Motion | Event | FOR ENLARGEMENT OF TIME TO RESPOND TO FIRST REQUEST FOR PRODUCTION |
| 226 | 06/02/2026 | | Motion for Extension of Time | Event | |
| 219 | 06/02/2026 | | Notice of Hearing- | Event | 06/17/2026 AT 1:30 PM |
| 225 | 06/01/2026 | | Request for Production | Event | |
| 224 | 06/01/2026 | | Exhibit List | Event | |
| 223 | 06/01/2026 | | Witness List | Event | |
| 222 | 06/01/2026 | | Request for Admissions | Event | |
| 221 | 06/01/2026 | | Notice of Interrogatory | Event | |
| 220 | 06/01/2026 | | Notice of Interrogatory | Event | |
| 218 | 06/01/2026 | | Notice of Taking Deposition | Event | of Cheryl Dopp on July 9, 2026 |
| 217 | 06/01/2026 | | Exhibit List | Event | FOR TRIAL |
| 216 | 06/01/2026 | | Witness List | Event | FOR TRIAL |
| 215 | 06/01/2026 | | Order: | Event | 3RD DCA ORDER Pro Se Verified Petition for Writ of Prohibition to Review Orders Denying Amended Verified Second and Third Verified Motions to Disqualify it is order that said Petition is hereby denied.,etc |
| 214 | 06/01/2026 | | Motion to Strike | Event | JFLP'S AMENDED CROSSCLAIM AS A SHAM PLEADING, MOTION TO DISMISS WITH PREJUDICE, AND MOTION TO STRIKE DEMAND FOR ATTORNEY'S FEES |
| 213 | 06/01/2026 | | Notice of Filing: | Event | COPY OF THE THIRD DISTRICT COURT OF APPEALS OF FLORIDA'S ORDER DENYING PETITIONER'S CHERY DOPP, VERIFIED PETITION FOR WRIT OF PROHIBITION ENTERED ON 05/29/26 |
| 212 | 05/28/2026 | | Motion to Dismiss | Event | |
| 211 | 05/27/2026 | | Notice: | Event | Cheryl Dopp's |
| 210 | 05/26/2026 | | Answer and Affirmative Defense | Event | |
| 209 | 05/26/2026 | | Response to Motion | Event | FOR SUMMARY JUDGMENT |
| 208 | 05/26/2026 | | Notice: | Event | OF LIMITED PARTNERSHIPS FAILURE TO TIMELY RESPOND TO MOTION FOR SUMMARY JUDGMENT |
| 207 | 05/26/2026 | | Motion for Extension of Time | Event | AND TO STAY RESPONSE DEADLINE |
| 206 | 05/26/2026 | | Order: | Event | ON EMERGENCY MOTION |
| 205 | 05/22/2026 | | Notice of Hearing- | Event | 06/15/2026 10:30 AM |
| 202 | 05/22/2026 | | Order Denying Judicial Disqualification | Event | |
| 204 | 05/21/2026 | | Motion for Rehearing | Event | |
| 203 | 05/21/2026 | | Motion to Disqualify | Event | TRIAL JUDGE AND INCORPORATED MEMORANDUM OF LAW |
| 201 | 05/21/2026 | | Motion to Strike | Event | |
| 200 | 05/20/2026 | | Motion: | Event | FOR ORDER TO SHOW CAUSE |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 199 | 05/18/2026 | | Notice of Production | Event | |
| 198 | 05/18/2026 | | Amended Counter Claim | Event | |
| 197 | 05/18/2026 | | Notice of Taking Deposition | Event | |
| 192 | 05/18/2026 | | Order: | Event | DIRECTING CLERK TO REMOVE FILINGS AT DE 153, 155 AND 174 FOR NON-COMPLIANCE WITH THE APPLICABLE FLORIDA RULES OF PROCEDURE AND FLORIDA STATUTES |
| | 05/18/2026 | | Special Sets | Hearing | CROSSCLAIM PLAINTIFF S JEMISON FAMILY LIMITED PARTNERSHIP, MOTION TO STRIKE NOTICES |
| 196 | 05/17/2026 | | Response to Motion | Event | to Strike Notices |
| 195 | 05/17/2026 | | Notice of Filing: | Event | Statement of fact regarding scheduling |
| 194 | 05/17/2026 | | Notice of Filing: | Event | Of representation of merits ruling by the court |
| 193 | 05/16/2026 | | Notice of Filing: | Event | CROSSCLAIM PLAINTIFFS, JEMISON FAMILY LIMITED PARTNERSHIP, LIST OF PREFERRED MEDIATORS |
| 191 | 05/14/2026 | | Notice of Filing: | Event | CROSSCLAIM PLAINTIFFS, JEMISON FAMILY LIMITED PARTNERSHIP, LIST OF PREFERRED MEDIATORS |
| 190 | 05/14/2026 | | Notice of Cancellation of Hearing | Event | |
| 189 | 05/13/2026 | | Notice: | Event | OF WITHDRAWAL OF MOTION FOR CASE MANAGEMENT CONFERENCE, REQUEST TO CANCEL HEARING SCHEDULED FOR MAY 14, 2026, AND NOTICE OF NON-APPERANCE |
| 188 | 05/13/2026 | | Request: | Event | FOR INCLUSION IN CASE MANAGEMENT ORDER |
| 187 | 05/13/2026 | | Amended Cross Claim | Event | CONSOLIDATED |
| 186 | 05/12/2026 | | Notice of Filing: | Event | PROPOSED ORDER ON MOAKLEY SANCTIONS HEARING |
| 185 | 05/12/2026 | | Notice: | Event | OF FINANCIAL HARDSHIP AND INABILITY TO RETAIN COUNSEL |
| 184 | 05/12/2026 | | Order: | Event | ON CROSS-DEFENDANT'S MOTION FOR MOAKLEY SANCTIONS |
| 183 | 05/12/2026 | | Order: | Event | ON APPOINTMENT OF MEDIATOR |
| 182 | 05/12/2026 | | Order: | Event | DENYING CROSS-DEFENDANT'S MOTION FOR PROTECTIVE ORDER |
| | 05/12/2026 | | Special Sets | Hearing | Motion for Moakley Sanctions |
| 181 | 05/11/2026 | | Notice of Production | Event | |
| 180 | 05/11/2026 | | Notice of Cancellation of Hearing | Event | |
| 177 | 05/11/2026 | | Notice of Hearing- | Event | 05/18/2026 AT 10:00 AM |
| 179 | 05/08/2026 | | Notice of Filing: | Event | NOTICE OF MALIGNMENT OF DOPP AND FALSE CHARACTERIZATION OF RIBAYA v. BOARD OF TRUSTEES TO DISCREDIT DOPP |
| 178 | 05/08/2026 | | Notice of Taking Deposition | Event | |
| 176 | 05/08/2026 | | Notice of Filing: | Event | CERTIFIED TRANSCRIPT |
| 173 | 05/08/2026 | | Motion to Strike | Event | |
| 172 | 05/08/2026 | | Order: | Event | STRIKING CROSS-DEFENDANT'S DEMAND FOR JURY TRIAL |
| | 05/08/2026 | | Special Sets | Hearing | Motion for protective order |
| 175 | 05/07/2026 | | Notice of Taking Deposition | Event | |
| 171 | 05/07/2026 | | Notice of Hearing- | Event | 05/14/2026 AT 2:30 PM |
| | 05/07/2026 | | Motion Calendar | Hearing | CROSSCLAIM PLAINTIFF S, JEMISON FAMILY LIMITED PARTNERSHIP, MOTION TO STRIKE JURY TRIAL DEMAND OF CROSSCLAIM DEFENDANT, CHERYL DOPP |
| 170 | 05/06/2026 | | Motion to Strike | Event | PARAGRAPHS 3 AND 4 OF THE MAY 6, 2026, ORDER GRANTING MOTION TO CONSOLIDATE |
| 169 | 05/06/2026 | | Order: | Event | GRANTING CROSS-PLAINTIFF'S MOTION TO CONSOLIDATE CASES |
| 168 | 05/06/2026 | | Objection: | Event | TO ENTRY OF PROPOSED ORDER |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 167 | 05/06/2026 | | Order Denying Judicial Disqualification | Event | |
| | 05/06/2026 | | Motion Calendar | Hearing | CROSSCLAIM PLAINTIFF S MOTION TO CONSOLIDATE CASES |
| 166 | 05/05/2026 | | Amended Motion | Event | TO DISQUALIFY TRIAL JUDGE (WITH ATTACHED EXHIBIT A) |
| 165 | 05/05/2026 | | Motion to Disqualify | Event | TRIAL JUDGE |
| 164 | 05/04/2026 | | Notice of Hearing- | Event | 06/12/2026 AT 10:00 AM |
| 163 | 05/04/2026 | | Notice of Hearing- | Event | 05/08/2026 at 3:30 pm |
| 162 | 05/04/2026 | | Notice of Hearing- | Event | 05/12/2026 at 10:30 am |
| 161 | 05/01/2026 | | Request for Production | Event | TO CROSSCLAIM PLAINTIFF JEMISON FAMILY LIMITED PARTNERSHIP |
| 160 | 05/01/2026 | | Notice: | Event | OF CASE MANAGEMENT ISSUES REGARDING DUE PROCESS, ADEQUATE HEARING TIME, AND FAIR SEQUENCING OF RELATED MOTIONS |
| 159 | 05/01/2026 | | Notice of Hearing- | Event | 05/13/26 |
| 158 | 04/30/2026 | | Notice: | Event | OF ABSENCE FROM JURISDICTION |
| 157 | 04/30/2026 | | Memorandum of Law | Event | ON JFLP'S MOTION TO CONSOLIDATE CASES |
| 156 | 04/30/2026 | | Memorandum of Law | Event | ON JFLP'S MOTION TO CONSOLIDATE CASES |
| 154 | 04/29/2026 | | Notice: | Event | OF OBJECTION TO HEARING ON UNIFORM MOTION CALENDAR |
| 152 | 04/29/2026 | | Order on Motion to Compel | Event | DISCOVERY |
| | 04/29/2026 | | Motion Calendar | Hearing | CROSSCLAIM PLAINTIFF S MOTION TO COMPEL DISCOVERY |
| 151 | 04/28/2026 | | Motion for Continuance | Event | HEARING ON CROSSCLAIM DEFENDAN'TS, CHERYL DOPP, MOTION FOR CASE MANAGEMENT CONFERENCE |
| 149 | 04/28/2026 | | Order: | Event | GRANTING CROSS-PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM |
| | 04/28/2026 | | Special Sets | Hearing | CROSSCLAIM PLAINTIFF S, JEMISON FAMILY LIMITED PARTNERSHIP, MOTION TO DISMISS CROSSCLAIM DEFENDANT S, CHERYL DOPP, AMENDED COUNTERCLAIMS |
| 150 | 04/27/2026 | | Motion: | Event | for case management conference |
| 148 | 04/27/2026 | | Motion for Leave | Event | |
| 146 | 04/27/2026 | | Notice of Hearing- | Event | 05/04/2026 AT 2:00 PM |
| 147 | 04/26/2026 | | Notice of Filing: | Event | HEARING TRANSCRIPT |
| 145 | 04/22/2026 | | Amended Notice of Hearing | Event | 04-29-2026 |
| 144 | 04/22/2026 | | Notice of Hearing- | Event | May 6, 2026 |
| 143 | 04/21/2026 | | Notice of Hearing- | Event | 05/07/2026 |
| 142 | 04/19/2026 | | Notice: | Event | OF PENDING CORRECTION AND RESPONSE TO MOTION TO CONSOLIDATE AND REQUEST FOR CASE MANAGEMENT |
| 141 | 04/19/2026 | | Motion: | Event | FOR ORDER TO SHOW CAUSE, TO CORRECT THE RECORD, AND FOR SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY |
| 140 | 04/16/2026 | | Response In Opposition | Event | TO CROSSCLAIM PLTF'S MOTION TO STRIKE JURY TRIAL DEMAND |
| 139 | 04/16/2026 | | Notice of Hearing- | Event | June 1, 2026 at 1:30pm ON DEFENDANT/CROSS-PLAINTIFF CHERYL ANNE DOPPS MOTION FOR SUMMARY JUDGMENT |
| 138 | 04/16/2026 | | Motion for Summary Judgment | Event | as to JFLP's Premature Default-Based Claims and Failure to Satisfy Conditions Precedent |
| 137 | 04/15/2026 | | Order of Withdrawal as Attorney of Record | Event | |
| 136 | 04/15/2026 | | Motion: | Event | For entry a case management order |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 135 | 04/15/2026 | | Notice of Compliance | Event | |
| | 04/15/2026 | | Motion Calendar | Hearing | COTZEN LAW S MOTION TO WITHDRAW AS COUNSEL |
| 134 | 04/14/2026 | | Notice of Hearing- | Event | 04/28/2026 AT 10:45 AM |
| 133 | 04/13/2026 | | Response In Opposition | Event | TO CROSSCLAIM PLAINTIFFS MOTION TO COMPEL DISCOVERY |
| 132 | 04/10/2026 | | Notice of Compliance | Event | |
| 131 | 04/08/2026 | | Notice of Hearing- | Event | April 29, 2026 at 9:30 AM |
| 130 | 04/08/2026 | | Notice of Hearing- | Event | April 22, 2026 at 9:30 AM |
| 128 | 04/08/2026 | | Order Extending Time for | Event | CERTAIN PRETRIAL DEADLINES |
| | 04/08/2026 | | Motion Calendar | Hearing | CROSSCLAIM PLAINTIFF S, JEMISON FAMILY LIMITED PARTNERSHIP, MOTION FOR EXTENSION OF CERTAIN PRETRIAL DEADLINES |
| 129 | 04/07/2026 | | Motion: | Event | TO CANCEL UNILATERALLY SET HEARING AND WRITTEN OBJECTION TO CROSSCLAIM PLTF'S MOTION FOR EXTENSION OF CERTAIN PRETRIAL DEADLINES |
| 127 | 04/06/2026 | | Motion to Compel | Event | |
| 126 | 04/06/2026 | | Motion to Strike | Event | |
| 125 | 04/02/2026 | | Notice of Hearing- | Event | 04/15/26 |
| | 04/02/2026 | | Motion Calendar | Hearing | COTZEN LAW S MOTION TO WITHDRAW AS COUNSEL |
| 124 | 04/01/2026 | | Motion to Consolidate | Event | |
| 123 | 03/27/2026 | | Notice of Hearing- | Event | 04-08-2026 |
| 122 | 03/26/2026 | | Witness List | Event | |
| 121 | 03/26/2026 | | Exhibit List | Event | |
| 120 | 03/20/2026 | | Motion for Extension of Time | Event | |
| 119 | 03/18/2026 | | Notice of Hearing- | Event | Thursday, April 2, 2026 |
| | 03/18/2026 | | Transfer Calendar | Hearing | Motion to Transfer. |
| 118 | 03/17/2026 | | Notice of Cancellation of Hearing | Event | |
| 117 | 03/02/2026 | | Response In Opposition | Event | TO CROSSCLAIM PLAINTIFF JEMISON FAMILY LIMITED PARTNERSHIPS MOTION TO DISMISS AMENDED CROSS-CLAIMS |
| 116 | 02/27/2026 | | Notice of Hearing- | Event | March 18, 2026 |
| 115 | 02/26/2026 | | Notice of Hearing- | Event | March 18,2026 at 9:30 A.M. |
| 114 | 02/26/2026 | | Motion to Withdraw | Event | |
| 113 | 02/25/2026 | | Motion to Dismiss | Event | |
| 112 | 02/25/2026 | | Reply to Affirmative Defenses | Event | |
| 111 | 02/22/2026 | | Motion to Transfer | Event | |
| 110 | 02/22/2026 | | Motion for Protective Order | Event | |
| 109 | 02/22/2026 | | Notice of Related Cases | Event | |
| 108 | 02/22/2026 | | Notice of Filing: | Event | Audio recording |
| 107 | 02/19/2026 | | Order: | Event | DENYING CROSS-DEFENDANT'S MOTIONS TO DISCHARGE LIS PENDENS |
| | 02/19/2026 | | Special Sets | Hearing | CROSSCLAIM DEFENDANT\/CROSSCLAIMANT CHERYL DOPP'S MOTION TO DISCHARGE LIS PENDENS AND FOR ALTERNATIVE RELIEF (RESERVING CLAIM FOR DAMAGES) |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 106 | 02/18/2026 | | Notice of Filing: | Event | Exhibit K4 (Supplemental)_ - Crossclaim Defendants Verified Notice of Filing Supplemental Proof of Payments |
| 105 | 02/17/2026 | | Notice: | Event | CROSSCLAIM DEFENDANT'S HEARING BRIEF IN SUPPORT OF MOTION TO DISSOLVE LIS PENDENS AND IN OPPOSITION TO MOTION FOR SANCTIONS |
| 104 | 02/17/2026 | | Notice: | Event | OF ERRATA AND CLARIFICATION REGARDING PRIOR MOTION TO DISCHARGE LIS PENDENS |
| 102 | 02/17/2026 | | Amended Answer | Event | |
| 101 | 02/16/2026 | | Reply to Affirmative Defenses | Event | |
| 100 | 02/16/2026 | | Response: | Event | TO CROSSCLAIM DEFENDANTS, CHERYL DOPP, MOTION TO DISSOLVE LIS PENDENS AND REQUEST FOR SANCTIONS |
| 99 | 02/16/2026 | | Motion to Dismiss | Event | |
| 103 | 02/13/2026 | | Voluntary Dismissal | Judgment | |
| 98 | 02/13/2026 | | Final Disposition Document | Event | |
| 97 | 02/13/2026 | 35163/2218 | Voluntary Dismissal | Event | |
| 96 | 02/12/2026 | | Amended Motion | Event | TO DISSOLVE LIS PENDENS |
| 95 | 02/11/2026 | | Response to Motion | Event | |
| 94 | 02/09/2026 | | Notice of Hearing- | Event | 02/19/2026 AT 11:00 AM |
| 93 | 01/29/2026 | | Receipt: | Event | Receipt#:3200036 Amt Paid:$900.00 Comment: Allocation Code Quantity Unit Amount 3203-Foreclose Cross Cl 1 $900.00 $900.00 Tender Type:eFilings Tender Amt:$900.00 Receipt Date:01/29/2026 Register#:320 Cashier:EFilingUser EFiling #:240400450 |
| 92 | 01/28/2026 | | Motion: | Event | To discharge Lis Pendens |
| 91 | 01/27/2026 | | Notice of Filing: | Event | Exhibits |
| 90 | 01/27/2026 | | Answer and Counter Claim | Event | |
| 89 | 01/07/2026 | | Motion for Extension of Time | Event | |
| 88 | 01/06/2026 | | Order Denying Judicial Disqualification | Event | |
| 87 | 01/05/2026 | | Motion: | Event | TO DISQUALIFY/RESCUE THE HONORABLE ABBY CYNAMON, CIRCUIT JUDGE |
| 86 | 12/20/2025 | | Receipt: | Event | Receipt#:3240172 Amt Paid:$9.00 Name:LITOW, LAURENCE S 350 E LAS OLAS BLVD SUITE 1440 FORT LAUDERDALE FL 33301-4216 Comment: Allocation Code Quantity Unit Amount 3142-Recording Fee 1 $4.00 $4.00 3142-Recording Fee 1 $5.00 $5.00 Tender Type:eFilings Tender Amt:$9.00 Receipt Date:12/20/2025 Register#:324 Cashier:EFilingUser EFiling #:238034182 |
| 85 | 12/20/2025 | | Receipt: | Event | Receipt#:3240171 Amt Paid:$900.00 Name:LITOW, LAURENCE S 350 E LAS OLAS BLVD SUITE 1440 FORT LAUDERDALE FL 33301-4216 Comment: Allocation Code Quantity Unit Amount 3203-Foreclose Cross Cl 1 $900.00 $900.00 Tender Type:eFilings Tender Amt:$900.00 Receipt Date:12/20/2025 Register#:324 Cashier:EFilingUser EFiling #:238034015 |
| 84 | 12/18/2025 | | Answer and Cross Claim | Event | INTERVENOR DEFENDANT JEMISON FAMILY LIMITED PARTNERSHIP'S |
| 83 | 12/18/2025 | 35083/2034 | Lis Pendens | Event | |
| 82 | 12/11/2025 | | Order Extending Time for | Event | PRETRIAL DEADLINES |
| 81 | 12/04/2025 | | Order: | Event | the Motion to Intervene |
| 80 | 12/04/2025 | | Order: | Event | GRANTING NON-PARTY JEMISON FAMILY LIMITED PARTNERSHIP'S MOTION TO INTERVENE |
| | 12/03/2025 | | Special Sets | Hearing | NON-PARTY JEMISON FAMILY LIMITED PARTNERSHIP S MOTION TO INTERVENE |
| 79 | 12/01/2025 | | Publication Rejection Letter | Event | A. An original affidavit for constructive service is required, see F.S. 49.041. (For each defendant listed). Must be valid/submitted with no more than 60 days of the Notice of Action. The Last known address must be stated in or on the Constructive or the Diligent Search. : Pursuant to clerk's procedures, we are unable to process your Notice of Action. On 11/04/2025 you were sent a rejection letter, and nothing was corrected but sending in more copies of the Notice of Action in which you were still one short. You do not have an Affidavit of diligent search on the docket; you did not correct the name of the newspaper that we use. You did not correct the manner in which the case number should be written. Please see the correct way above. I am sending to you again a copy of the newspaper information and a copy of the procedures and requirements for issuing a Notice of Action in Dade County. Again, please make the necessary corrections and resubmit for processing. |
| 78 | 11/24/2025 | | Notice Of Voluntary Dismissal Of Unknown Parties | Event | Spouse of Cheryl A. Dopp |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 77 | 11/20/2025 | | Order Vacating Default | Event | |
| 76 | 11/14/2025 | | Notice of Hrg Special Appt | Event | 12-03-2025 at 01:30 PM via ZOOM |
| 75 | 11/07/2025 | | Notice of Intent to Serve Subpoena | Event | ALL STAR COURT SERVICES, INC. |
| 74 | 11/06/2025 | | Notice of Filing: | Event | Subpoena without Deposition to T-Mobile USA, Inc. served on November 4, 2025. (Exhibit "A") |
| 73 | 11/06/2025 | | Motion to Quash | Event | |
| 72 | 11/04/2025 | | Notice of Appearance | Event | |
| 71 | 11/04/2025 | | Notice of Cancellation of Hearing | Event | |
| 70 | 11/04/2025 | | Publication Rejection Letter | Event | C. Insufficient copies of Notice of Action and Complaint or Petition. (3 notices & 1 complaint are always required, Add 1 notice & complaint per defendant, per address & BIG self-stamped envelope & 1 envelope for attorney SASE. Use FRCP form 1.919 or 1.920). Please make sure to include a complete package for each Defendant Listed in the notice of Action. : Pursuant to clerk's procedures, we are unable to process. Please see letter "C" above. Also, you need to enter the case number in the correct format, which should be 2025-010456-CA-01. This property is located in Miami Dade County; therefore, you need to publish in our newspaper in Dade County. You need to supply a self-addressed stamped envelope to receive your documents back. Enclosed is a copy of the requirements and procedures on issuing a Notice of Action in Dade County. Also, enclosed is a copy of the newspaper information. Please make the necessary corrections and re-submit for processing. |
| 69 | 11/04/2025 | | Attachment and/or Exhibit to Order | Event | |
| 68 | 11/04/2025 | | Order: | Event | on Defendant's Supplemental Motion to Vacate Clerk's Default |
| 67 | 11/03/2025 | | Notice of Hearing- | Event | 11/06/2025 AT 3:00 PM |
| 66 | 10/28/2025 | | Motion to Intervene | Event | |
| | 10/28/2025 | | Motion Calendar | Hearing | LIMITED APPEARANCE MOTION TO VACATE CLERK S DEFAULT AS VOID FOR LACK OF SERVICE |
| 65 | 10/27/2025 | | Response to Motion | Event | |
| 64 | 10/27/2025 | | Notice of Filing: | Event | EXHIBIT D Invalid Priority of Lien |
| 63 | 10/27/2025 | | Notice of Limited Appearance | Event | AND NOTICE OF FILING OF INFORMATIONAL EXHIBITS A, B, & C |
| 62 | 10/27/2025 | | Notice of Filing: | Event | Exhibit C-PNC Bill for current period addressed to the association (Whole Building), showing no delinquency |
| 61 | 10/27/2025 | | Notice of Limited Appearance | Event | AND NOTICE OF FILING OF INFORMATIONAL EXHIBITS A, B, & C |
| 60 | 10/27/2025 | | Notice: | Event | OF WITHDRAWAL AND REPLACEMENT OF PRIOR STIPULATION |
| 59 | 10/26/2025 | | Notice of Filing: | Event | Exhibit B |
| 58 | 10/26/2025 | | Notice of Filing: | Event | Exhibit B |
| 57 | 10/26/2025 | | Affidavit in Support | Event | |
| 56 | 10/26/2025 | | Affidavit of: | Event | OF CHERYL A. DOPP |
| 54 | 10/26/2025 | | Notice of Hearing- | Event | October 28, 2025 at 9:00 AM |
| 53 | 10/26/2025 | | Notice of Filing: | Event | SUPPLEMENTAL NOTICE / SUPPLEMENT TO MOTION TO VACATE CLERKS DEFAULT |
| 52 | 10/26/2025 | | Motion: | Event | TO VACATE CLERKS DEFAULT (AS VOID FOR LACK OF SERVICE), FOR PRODUCTION OF PROCESS-SERVER RECORDS, AND/OR FOR CONTINUANCE |
| 55 | 10/24/2025 | | Service Returned | Event | |
| 50 | 10/20/2025 | | Service Return for Unknown Party | Event | UNKNOWN TENANT 2, NON SERVED |
| 49 | 10/20/2025 | | Service Returned | Event | |
| 51 | 10/18/2025 | | Motion: | Event | TO VACATE CLERK'S DEFAULT AS VOID FOR LACK OF SERVICE |
| 47 | 10/17/2025 | | Default | Event | |
| 48 | 10/16/2025 | | Notice of Filing: | Event | Affidavit of return service, Ch Dopp |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 46 | 10/16/2025 | | Response to Motion | Event | |
| 45 | 10/14/2025 | | Non-Military Affidavit | Event | |
| 44 | 10/14/2025 | | Motion for Default | Event | |
| 43 | 10/14/2025 | | Notice of Compliance | Event | |
| 42 | 10/14/2025 | | Notice To Change Attorney Of Record Within Firm | Event | |
| 41 | 10/14/2025 | | Notice: | Event | |
| 40 | 10/14/2025 | | Notice: | Event | |
| 39 | 10/14/2025 | | Directions to The Clerk | Event | |
| 38 | 10/14/2025 | | Notice of Filing: | Event | |
| 37 | 10/14/2025 | | Affidavit of Diligent Search | Event | |
| 36 | 10/14/2025 | | Affidavit of Diligent Search | Event | |
| 35 | 10/06/2025 | | Service Return for Unknown Party | Event | UNKNOWN TENANT 1 |
| 34 | 10/06/2025 | | Service Returned | Event | |
| 33 | 10/06/2025 | | Service Returned | Event | |
| 32 | 10/06/2025 | | Service Return for Unknown Party | Event | UNKNOWN SPOUSE OF CHERYL A. DOPP A/K/A CHERYL DOPP |
| 31 | 08/03/2025 | | Order Setting CM Deadline | Event | |
| 30 | 07/10/2025 | | Answer | Event | |
| 29 | 06/10/2025 | | Electronic Summons Email Notification Sent | Event | Kelley L Church |
| 28 | 06/10/2025 | | Electronic Summons Email Notification Sent | Event | Kelley L Church |
| 27 | 06/10/2025 | | Electronic Summons Email Notification Sent | Event | Kelley L Church |
| 26 | 06/10/2025 | | Electronic Summons Email Notification Sent | Event | Kelley L Church |
| 25 | 06/10/2025 | | Electronic Summons Email Notification Sent | Event | Kelley L Church |
| 24 | 06/10/2025 | | Electronic Summons Email Notification Sent | Event | Kelley L Church |
| 23 | 06/10/2025 | | Electronic Summons Email Notification Sent | Event | Kelley L Church |
| | 06/10/2025 | | 20 Day Summons Issued | Service | |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 22 | 06/10/2025 | | ESummons 20 Day Issued | Event | Re: Index # 14. |
| 21 | 06/10/2025 | | ESummons 20 Day Issued | Event | Re: Index # 13. |
| | 06/10/2025 | | 20 Day Summons Issued | Service | |
| 20 | 06/10/2025 | | ESummons 20 Day Issued | Event | Re: Index # 11. |
| | 06/10/2025 | | 20 Day Summons Issued | Service | |
| 19 | 06/10/2025 | | ESummons 20 Day Issued | Event | Re: Index # 12. |
| | 06/10/2025 | | 20 Day Summons Issued | Service | |
| 18 | 06/10/2025 | | ESummons 20 Day Issued | Event | Re: Index # 10. |
| 17 | 06/10/2025 | | ESummons 20 Day Issued | Event | Re: Index # 8. |
| 16 | 06/10/2025 | | ESummons 20 Day Issued | Event | Re: Index # 9. |
| 15 | 06/07/2025 | | Receipt: | Event | Receipt#:3200156 Amt Paid:$70.00 Name:KELLEY L CHURCH 255 S ORANGE AVE STE 900 ORLANDO FL 32801-3454 Comment: Allocation Code Quantity Unit Amount 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 Tender Type:eFilings Tender Amt:$70.00 Receipt Date:06/07/2025 Register#:320 Cashier:EFilingUser EFiling #:224668126 |
| 14 | 06/05/2025 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 13 | 06/05/2025 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 12 | 06/05/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 11 | 06/05/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 10 | 06/05/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 9 | 06/05/2025 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 8 | 06/05/2025 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 6 | 06/04/2025 | 34795/3382 | Lis Pendens | Event | |
| 5 | 06/04/2025 | | Receipt: | Event | Receipt#:3200214 Amt Paid:$911.00 Name:KELLEY L CHURCH 255 S ORANGE AVE STE 900 ORLANDO FL 32801-3454 Comment: Allocation Code Quantity Unit Amount 3201-Foreclosure Filing 1 $906.00 $906.00 3142-Recording Fee 1 $5.00 $5.00 Tender Type:eFilings Tender Amt:$911.00 Receipt Date:06/04/2025 Register#:320 Cashier:EFilingUser EFiling #:224457361 |
| 4 | 06/03/2025 | | Verification Form for Mortgage Foreclosure | Event | |
| 2 | 06/03/2025 | | Complaint | Event | |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 1 | 06/03/2025 | | Civil Cover Sheet - Claim Amount | Event | |

# Case Information

**Local Case Number:** 2025-021801-CA-01

**State Case Number:** 132025CA02180101GE01

**Case Style:** JEMISON FAMILY LIMITED PARTNERSHIP vs CHERYL DOPP

**Filing Date:** 11/04/2025

**Judicial Section:** CA09 - Downtown Miami - Judge Cynamon, Abby

**Case Status:** OPEN

**Case Type:** RPMF -Non-Homestead

**Consolidated Case No.:**

# Related Cases

**Case Number:** 2025-010456-CA-01

**Filing Date:** 06/03/2025

**Case Type:** RPMF -Non-Homestead

# Hearing Details

**Hearing Date:** 06/11/2026

**Description:** Special Sets

**Hearing Time:** 1:30PM

**Hearing Location:**

**Hearing Code:** SPECSETS

# Parties

| Party Description | Party Name | Attorney Information | Other Attorney(s) |
|---|---|---|---|
| Plaintiff | JEMISON FAMILY LIMITED PARTNERSHIP | **B#:** 328758<br>Litow, Laurence S | |
| Defendant | DOPP, CHERYL | | |

# Dockets

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | 06/11/2026 | | Special Sets | Hearing | This motion for summary judgment is for a Homestead property that was miscecatezed when the plaintiff filed this complaint. |
| 56 | 05/26/2026 | | Notice: | Event | OF LIMITED PARTNERSHIPS FAILURE TO TIMELY RESPOND TO MOTION FOR SUMMARY JUDGMENT |
| 55 | 05/18/2026 | | Amended Counter Claim | Event | |
| 53 | 05/06/2026 | | Order Denying Judicial Disqualification | Event | |
| 54 | 05/05/2026 | | Amended Motion | Event | |
| 52 | 05/05/2026 | | Motion to Disqualify | Event | TRIAL JUDGE |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 51 | 05/04/2026 | | Notice of Hearing- | Event | 06/11/2026 AT 1:30 PM |
| 50 | 05/01/2026 | | Request for Production | Event | |
| 49 | 05/01/2026 | | Notice: | Event | OF HOMESTEAD STATUS AND OF MISCATEGORIZATION OF CASE TYPE ON THE DOCKET |
| 48 | 04/19/2026 | | Motion: | Event | TO CORRECT CLERICAL ERROR AND TO VACATE ORDER GRANTING MOTION TO TRANSFER PURSUANT TO FLA. R. CIV. P. 1.540(a) |
| 47 | 04/16/2026 | | Notice of Hearing- | Event | June 1, 2026 at 2:15 pm ON DOPPS MOTION FOR SUMMARY JUDGMENT |
| 46 | 04/16/2026 | | Motion for Summary Judgment | Event | as to JFLPs Premature Default-Based Claims and Failure to Satisfy Conditions Precedent |
| 45 | 04/15/2026 | | Motion: | Event | For a case management order |
| 43 | 03/24/2026 | | Order of Transfer (jud Sect Chg) Section: | Event | |
| 42 | 03/23/2026 | | Reply to Affirmative Defenses | Event | |
| 41 | 03/20/2026 | | Motion to Strike | Event | |
| 40 | 03/19/2026 | | Motion to Transfer | Event | |
| 39 | 03/17/2026 | | Certificate of Indigency / Insolvency | Event | |
| 38 | 03/15/2026 | | Motion to Compel | Event | |
| 37 | 03/15/2026 | | Motion to Strike | Event | |
| 36 | 03/02/2026 | | Affidavit of Indigency | Event | Application For Determination of Civil Indigent Status. |
| 35 | 03/02/2026 | | Amended Answer | Event | |
| 34 | 03/02/2026 | | Answer and Affirmative Defense | Event | |
| 33 | 02/25/2026 | | Order Setting Non-Jury Trial with Mediation Referral | Event | |
| 32 | 02/22/2026 | | Notice of Related Cases | Event | |
| 31 | 02/22/2026 | | Motion to Transfer | Event | |
| 30 | 02/22/2026 | | Notice of Filing: | Event | AUDIO RECORDING AND TRANSCRIPT OF LOAN APPLICATION CALL |
| 29 | 02/22/2026 | | Notice: | Event | Withdrawal of motion |
| 28 | 02/13/2026 | | Response to Motion | Event | |
| 27 | 02/12/2026 | | Notice: | Event | Withdrawal of filing |
| 26 | 02/11/2026 | | Reply | Event | IN SUPPORT OF MOTION TO DISCHARGE LIS PENDENS AND RESPONSE TO JFLP'S REQUEST FOR SANCTIONS |
| 25 | 02/11/2026 | | Reply | Event | IN SUPPORT OF MOTION TO DISCHARGE LIS PENDENS |
| 24 | 02/09/2026 | | Notice: | Event | Defendant's |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 23 | 02/09/2026 | | Order Denying Motion to Dismiss | Event | |
| 22 | 02/04/2026 | | Motion: | Event | TO RESET HEARING |
| 21 | 01/30/2026 | | Response to Motion | Event | TO DISMISS AND REQUEST FOR IMMEDIATE DISCHARGE OF LIS PENDENS |
| 20 | 01/19/2026 | | Notice of Hearing- | Event | 02/03/26 |
| 19 | 01/19/2026 | | Notice of Cancellation of Hearing | Event | |
| 18 | 01/12/2026 | | Notice of Hearing- | Event | January 27, 2026 |
| 17 | 01/07/2026 | | Emergency Motion | Event | FOR HEARING |
| 16 | 01/07/2026 | | Notice of Appearance | Event | |
| 15 | 01/06/2026 | | Notice of Confidential Information Within Court Filing | Event | |
| 14 | 01/06/2026 | | Motion to Dismiss | Event | PLAINTIFFS VERIFIED COMPLAINT AND REQUEST FOR IMMEDIATE DISCHARGE OF LIS PENDENS, AND INCORPORATED MEMORANDUM OF LAW |
| 13 | 01/03/2026 | | Order Setting CM Deadline | Event | |
| 12 | 11/21/2025 | | Electronic Summons Email Notification Sent | Event | Laurence S. Litow |
| | 11/21/2025 | | 20 Day Summons Issued | Service | |
| 11 | 11/21/2025 | | ESummons 20 Day Issued | Event | Re: Index # 9. |
| 10 | 11/21/2025 | | Receipt: | Event | Receipt#:3260067 Amt Paid:$10.00 Name:LITOW, LAURENCE S 350 E LAS OLAS BLVD SUITE 1440 FORT LAUDERDALE FL 33301-4216 Comment: Allocation Code Quantity Unit Amount 3139-Summons Issue Fee 1 $10.00 $10.00 Tender Type:eFilings Tender Amt:$10.00 Receipt Date:11/21/2025 Register#:326 Cashier:EFilingUser EFiling #:236141935 |
| 9 | 11/19/2025 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 8 | 11/06/2025 | | Receipt: | Event | Receipt#:3230041 Amt Paid:$13.00 Name:LITOW, LAURENCE S 350 E LAS OLAS BLVD SUITE 1440 FORT LAUDERDALE FL 33301-4216 Comment: Allocation Code Quantity Unit Amount 3142-Recording Fee 1 $8.00 $8.00 3142-Recording Fee 1 $5.00 $5.00 Tender Type:eFilings Tender Amt:$13.00 Receipt Date:11/06/2025 Register#:323 Cashier:EFilingUser EFiling #:235091341 |
| 6 | 11/05/2025 | | Receipt: | Event | Receipt#:3260161 Amt Paid:$915.00 Name:LITOW, LAURENCE S 350 E LAS OLAS BLVD SUITE 1440 FORT LAUDERDALE FL 33301-4216 Comment: Allocation Code Quantity Unit Amount 3201-Foreclosure Filing 1 $906.00 $906.00 3142-Recording Fee 1 $4.00 $4.00 3142-Recording Fee 1 $5.00 $5.00 Tender Type:eFilings Tender Amt:$915.00 Receipt Date:11/05/2025 Register#:326 Cashier:EFilingUser EFiling #:235062253 |
| 7 | 11/04/2025 | 35018/4629 | Lis Pendens | Event | |
| 4 | 11/04/2025 | 35015/3548 | Lis Pendens | Event | |
| 2 | 11/04/2025 | | Complaint | Event | |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 1 | 11/04/2025 | | Civil Cover Sheet - Claim Amount | Event | |

# EXHIBIT C

Filing # 248640876 E-Filed 05/20/2026 03:05:11 PM

IN THE CIRCUIT COURT FOR THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

PNC BANK, NA,

CASE NO: 2025-010456-CA-01 (09)

Plaintiff,

v.

CHERYL DOPP, UNKNOWN SPOUSE OF CHERYL A. DOPP A/K/A CHERYL DOPP, 1800 CLUB CONDOMINIUM ASSOCIATION, INC., 1800 CLUB MASTER ASSOCIATION, INC., DEPARTMENT OF TREASURY-INTERNAL REVENUE SERVICE, UNKNOWN TENANT 1, UNKNOWN TENANT 2, AND JEMISON FAMILY LIMITED PARTNERSHIP

Defendants.
_______________________________________

JEMISON FAMILY LIMITED PARTNERSHIP,

Crossclaim Plaintiff,

v.

CHERYL DOPP,

Crossclaim Defendant.
_______________________________________/

**CROSSCLAIM PLAINTIFF'S, JEMISON FAMILY LIMITED PARTNERSHIP, MOTION FOR ORDER TO SHOW CAUSE**

Crossclaim Plaintiff, Jemison Family Limited Partnership ("JFLP"), by and through its undersigned counsel, hereby moves for entry of an Order to Show Cause directed to Crossclaim Defendant, Cheryl Dopp ("Dopp"), as to why the Court should not enjoin Dopp from continuing to act *pro se* in filing documents before this Court and require Dopp to pay the attorneys' fees incurred in bringing this Motion, and states:

## INTRODUCTION

This Motion arises from Dopp's sustained pattern of vexatious, frivolous, and abusive *pro se* litigation conduct in this case. Since JFLP intervened in this action in December 2025, Dopp has filed a torrent of meritless motions, unsubstantiated pleadings, and obstructive filings—virtually all of which have been denied by this Court, by the Honorable Judge William Thomas, or both. Her filings have included citations to fictitious case law, hallucinated statutory text, impermissible shotgun pleadings, meritless requests for relief, repeated attacks on prior orders of the Court, and *ad hominem* attacks on opposing counsel—all generated, by her own admission, using artificial intelligence tools without adequate verification or oversight.

These improper tactics have caused this Court and JFLP to waste considerable time and resources on this case due to the burden of Dopp's frivolous conduct. The Court should not allow Dopp's antics to continue. Accordingly, the Court should require Dopp to show good cause why the Court should not exercise its inherent authority to sanction her by prohibiting her from submitting any further *pro se* filings before this Court.

## FACTUAL BACKGROUND

### I. BACKGROUND OF THE LITIGATION

On or around September 25, 2024, Dopp executed a promissory note in favor of JFLP in the amount of $185,000 with an interest rate of twelve percent per annum and a maturity date of September 25, 2025 (the "Note"). As part of the Note, Dopp granted a security interest in three properties she owned, including 1800 N. Bayshore Drive, Apt. 2407, Miami, Florida 33132 (the "Property"), which served as collateral for the repayment of the Note. Dopp breached the Note when she failed to repay same on its maturity date.

PNC Bank, NA ("PNC") originally filed this mortgage foreclosure action on June 3, 2025. JFLP intervened as a defendant on December 4, 2025, and filed a Crossclaim against Dopp seeking establishment of and foreclosure on an equitable mortgage on the Property. PNC voluntarily dismissed its complaint on February 13, 2026, leaving only the crossclaim litigation between JFLP and Dopp.

Separately, JFLP filed the Related Case on November 4, 2025, involving the same Note but a different property located at 799 NE 70th Street, Miami, FL 33138 (together with the Property, the "Properties"). That case was originally assigned to Judge William Thomas and was subsequently transferred to this Court on or about March 23, 2026 and has since been consolidated with this case.

Throughout these proceedings, Dopp has sometimes been represented by counsel and sometimes proceeded *pro se*, but has represented herself *pro se* for the last several months.

## II. DOPP'S PATTERN OF MERITLESS AND UNSUCCESSFUL FILINGS

Dopp has filed a parade of meritless motions and pleadings, virtually all of which have been denied or dismissed. The following is a non-exhaustive summary of Dopp's erroneous and frivolous filings:

**1. Motion to Disqualify/Recuse The Court (January 5, 2026):** Dopp filed a Verified Motion to Disqualify the Court, alleging that the Judge's conduct and comments at prior hearings created a reasonable fear of bias. On January 6, 2026—just one day later—this Court denied the Motion to Disqualify as legally insufficient and improper.

**2. Motion to Discharge Lis Pendens (January 28, 2026):** Dopp filed a Motion to Discharge Lis Pendens arguing that JFLP's Crossclaim lacked a fair nexus to the Property, that JFLP had an adequate remedy at law, and that unclean hands warranted a discharge. This Motion contained citations to at least two entirely fictitious cases—*Houchins v. Scheid*, 433 So. 2d 58, 60 (Fla. 4th DCA 1983) and *Prudential Ins. Co. of Am. v. American-South-East-Asia Co.*, 289 So. 2d 453, 455 (Fla. 3d DCA 1974)—neither of which exists. The Motion also misquoted the text of Fla. Stat. § 48.23(3), replacing the actual statutory language with hallucinated text that does not appear in the statute. JFLP was forced to incur substantial expense responding to this frivolous Motion.

**3. Motion to Dissolve Lis Pendens (February 12, 2026):** After JFLP responded to the above-referenced Motion to Discharge Lis Pendens, Dopp filed a similar Motion to Dissolve Lis Pendens, recycling most of the same arguments and some additional ones. Although she removed the fictitious case citations, Dopp neither acknowledged nor apologized for citing fictitious law—an abuse of the adversary system. Worse, by this point, Judge Thomas had already denied a virtually identical Motion to Dismiss and Request for Immediate Discharge of Lis Pendens in the Related Case on February 9, 2026. Nevertheless, JFLP was forced to also respond to this frivolous Motion to Dissolve Lis Pendens, and Dopp later filed an improper and also frivolous "Hearing Brief in Support Motion to Dissolve and in Opposition to Motion for Sanction." This Court denied Dopp's frivolous Motion to Dissolve Lis Pendens on February 19, 2026.

**4. Replies Filed in Wrong Case (February 11, 2026):** Dopp filed two diatribe "replies" in the Related Case that she intended to file in this case relating to her Motions to Discharge the Lis Pendens. In those Replies, she (1) admitted use of generative AI tools without making the proper disclosure under Administrative Order 26-04; (2) refused to acknowledge that she cited fictitious case law and falsely stated she cited "only real, verified authorities"; and (3) made repeated ad hominem attacks on undersigned counsel. Dopp subsequently withdrew these replies after realizing she filed them in the wrong case but failed to take any corrective action or acknowledge her misconduct.

**5. Counterclaims (January 27, 2026):** Dopp filed Counterclaims asserting three claims: (1) Declaratory Judgment (No Lien/No Equitable Mortgage Right); (2) Declaratory Judgment (Usury/Illegality Bars Interest and Equitable Relief); and (3) Civil Usury. On February 16, 2026, JFLP moved to dismiss, arguing the Counterclaims constituted an impermissible shotgun pleading, failed to state any cause of action, and were factually and legally baseless.

**6. Amended Counterclaims (February 17, 2026):** Dopp filed Amended Counterclaims asserting claims for: (1) Civil Usury; (2) Declaratory Judgment (Sham Verified Filing / Impossibility of Conditions Precedent / Bar to Equitable Relief); and (3) Slander of Title. JFLP moved to dismiss again arguing the Counterclaims constituted an impermissible shotgun pleading, failed to state any cause of action, and were factually and legally baseless. In fact, Dopp's primary argument on usury is expressly contradicted by her own exhibits and affidavits. On April 28, 2026, this Court granted JFLP's Motion to Dismiss and dismissed Dopp's Amended Counterclaims.

**7. Motion to Transfer and Consolidate (February 22, 2026):** Dopp filed a "Motion to Transfer Crossclaim from Case No. 2025-010456-CA-01 and Consolidate Into the Earlier-Filed Action (Case No. 2025-021801-CA-01)." In that Motion to Transfer, Dopp expressly recognized this case and the Related Case are, in fact, related, and she *requested* they be transferred and consolidated—she wrongly attempted to have this case transferred to Judge Thomas because, as noted above, she has exhibited animosity towards the Court. On March 18, 2026, Chief Judge Fajardo Orshan transferred the Related Case to this Court.

**8. Motion for Protective Order (February 22, 2026):** Dopp filed a Motion for Protective Order, improperly attempting to avoid producing documents she exchanged with certain regulators without any legal or factual support for her such objections. These documents are directly related

to this action and not protected from disclosure under any provision of law. The Court denied this Motion on May 12, 2026.

**9. Motion to Cancel Hearing (April 7, 2026):** Dopp filed a Motion to Cancel a properly noticed hearing on a routine Motion for Extension of Pretrial Deadlines the day before the hearing was set to commence in an effort to unduly delay and mislead the Court about undersigned counsel's effort to have the Motion for Extension heard. Dopp also failed to provide any explanation as to why she objected to the Motion for Extension and, in fact, has since attempted to extend deadlines far beyond what JFLP was requesting at that time, clearly evidencing an improper purpose in her objection.

**10. Motion for Entry of New Case Management Order (April 15, 2026):** Dopp filed a Motion for Entry of a New Case Management Order, making material misrepresentations about undersigned counsel's efforts to confer with Dopp on setting hearings and other issues.

**11. Notice of Compliance (April 15, 2026).** Dopp filed this 14-page single spaced Notice of Compliance (plus 50 pages of exhibits) also making material misrepresentations about scheduling efforts and the status of this case and demonstrating a clear inability to understand the Florida Rules of Civil Procedure and Rules of the Court. This Notice also confirmed that Dopp has chosen to selectively participate in this case when convenient for her and refused to respond to undersigned counsel to delay these proceedings.[1] Dopp further accused undersigned counsel of violating various Rules Regulating the Florida Bar. Moreover, despite the fact that Dopp titled this document as a Notice, she included a WHEREFORE clause, including 8 requests for relief—none of which have any actual relationship to the merits of this case and are further efforts to force JFLP to spend time, money, and resources due to her frivolity.

**12. Motion for Summary Judgment (April 16, 2026):** Dopp filed a meritless Motion for Summary Judgment, arguing that JFLP filed suit prematurely. Her arguments have no basis in fact or law.

**13. Motion for Order to Show Cause, Correct Record, and Sanctions (April 19, 2026):** Dopp filed a 9-page Motion (plus 65 pages of exhibits) seeking sanctions against JFLP's counsel, accusing counsel of mischaracterizing her nonappearance at a hearing on the Motion for Extension, and alleging bad-faith conduct. The Motion accused JFLP of engaging in "procedural pressure," "litigation by attrition," and "manufactured noncompliance." None of that is true, nor does it have any merit. In fact, the entire basis of this argument is premised on a faulty and unsupportable position that JFLP represented that Dopp did not appear at an April 8, 2026 hearing. Critically, as the Court may recall, undersigned counsel fully explained the circumstances of Dopp's non-appearance at the hearing. More importantly, Dopp had filed the above-referenced Motion to Cancel the Hearing *prior to the hearing* explaining her objection to the proceeding—entirely defeating her own argument that undersigned counsel did anything sanctionable. Once again, this

[1] Dopp continuously argues that the fact that she and JFLP were discussing settlement terms she is somehow absolved from responding to scheduling efforts from undersigned counsel. Not only is Dopp wrong, but undersigned counsel has repeatedly informed Dopp that the case needs to move forward in accordance with the Court's deadlines regardless of any settlement discussions.

is another example of Dopp's tactic to delay and force JFLP and this Court to waste time and resources. The Court denied this Motion on May 12, 2026.

**14. Notice of Pending Correction and Response to Motion to Consolidate and Request for Case Management (April 19, 2026).** In this Frankenstein-like Notice/Response/Motion, Dopp attempts to claim that this Case and the Related Case should not be consolidated—despite her own prior request that they be consolidated. She also makes material misrepresentations about this case and seeks affirmative relief pertaining to purported case management issues—all of which are a result of Dopp's own conduct.

**15. Motion for Leave to File Second Amended Answer, Affirmative Defenses, and Counterclaims, and to File Third-Party Complaint (April 26, 2026):** Dopp filed this Motion seeking leave to file a more than 170-page (inclusive of exhibits) Second Amended Answer, Amended Counterclaims, and a Third-Party Complaint now adding claims against Attorney Ryan Clancy, Esq. and his firm Ainsworth & Clancy PLLC.

**16. Motion for Case Management Conference (April 27, 2026).** Despite never having set her prior motions for case management conference for hearing, Dopp filed yet another Motion for Case Management Conference, in which she made materially and demonstrably false allegations about undersigned counsel and purported issues she claims to be experiencing, which Dopp then unilaterally and improperly set the matter for a thirty-minute special set hearing that same day for May 4, 2026. The reason Dopp filed and set this Motion for Case Management was to improperly attempt to leapfrog JFLP's Motion to Consolidate, which was set for hearing on May 6, 2026.

**17. Notice of Filing – Crossclaim Defendant's Statement Preserving Record of April 29, 2026 Hearing on Crossclaim Plaintiff's Motion to Compel Discovery (April 29, 2026).** Dopp filed this Notice after a hearing on JFLP's Motion to Compel Discovery, in which she attempts to relitigate and attack the Court's Order granting the Motion to Compel Discovery. Dopp further made material misrepresentation about the Court's handling of the matter. For example, Dopp states: "The Court then asked whether there were discovery items that were not subject to the pending Motion for Protective Order. Before Dopp was afforded an opportunity to answer that question, the Court indicated it would locate and review the Motion for Protective Order itself." Not so. Dopp affirmatively responded to the Court that she had no other objections to JFLP's discovery requests other than the Motion for Protective Order, which the Court then located and read. The Court then granted JFLP's Motion to Compel Discovery, except as to the documents exchanged between Dopp and regulatory authorities, which are subject to Dopp's Motion for Protective Order. The Court's Order also found unpersuasive Dopp's only substantive argument that she allegedly already produced documents by virtue of filing them on the docket sheet as attachments to her various frivolous motions and pleadings and expressly required Dopp to provide all responsive documents "regardless of whether the documents have been attached as exhibits to filings in this matter or otherwise filed." The Court removed this filing from the docket as improper after a hearing on JFLP's Motion to Strike on May 18, 2026.

**18. Notice of Objection to Hearing on Uniform Motion Calendar (April 29, 2026).** Dopp filed this "Notice of Objection," erroneously arguing that JFLP's Motion to Consolidate is not a routine, uncontested, or procedurally minor matter. Again, there is no legitimate way Dopp can object to

the consolidation of this case and the Related Case, given that she previously sought consolidation herself.

**19. Memorandum of Law on JFLP's Motion to Consolidate Cases (April 30, 2026).** Dopp improperly filed yet another filing attempting to respond in opposition to JFLP's Motion to Consolidate.

**20. Notice of Preservation of Record Regarding March 2026 Transfer of Case No. 2025-021801-CA-01 (April 30, 2026).** Dopp filed this Notice, an eight-page document purporting to "preserve the record" regarding the transfer of the Related Case from Section CA27 (Hon. William Thomas) to Section CA09 (this Court) in March 2026. The Notice is rife with insinuations of impropriety by JFLP and the Court, suggesting without directly accusing that the transfer order was improperly obtained. Dopp improperly attempted to relitigate and cast aspersions on a transfer order entered by the Honorable Chief Judge Fajardo Orshan, through the vehicle of an unsworn "Notice" filed before this Court, which was particularly egregious given Dopp herself filed a motion to transfer. She was simply unhappy that Chief Judge Fajardo Orshan correctly concluded that the Related Case needed to transferred to this Court as the lower case number because Dopp has expressed clear (and misplaced) animosity with the Court as evidenced by her two motions to disqualify—both of which were legally and factually insufficient. The Court removed this filing from the docket as improper after a hearing on JFLP's Motion to Strike on May 18, 2026.

**21. Amended Memorandum of Law on JFLP's Motion to Consolidate Cases (April 30, 2026).** Dopp now filed a fourth improper and erroneous response in opposition to JFLP's Motion to Consolidate. *Again, this is despite the fact that she previously requested this case and the Related Case be consolidated.*

**22. Notice of Case Management Issues Regarding Due Process, Adequate Hearing Time, and Fair Sequencing of Related Motion (May 1, 2026).** Dopp filed this Notice, effectively acknowledging that she is not competent to represent herself in this case and, as such, needs more time than would ordinarily be required. While that may be true, this is simply another ploy to delay and prolong these proceedings. If Dopp wants to represent herself *pro se* in this action, she must be prepared to comply with all Court requirements and prepared to argue within the time limits that are appropriate for the applicable motion. Dopp's Notice once again makes unwarranted and meritless attacks on undersigned counsel.

**23. Notice of Homestead Status and of Miscategorization of Case Type on the Docket (May 1, 2026).** Dopp filed this Notice, making material misrepresentations about the nature of the Property that appear categorically false based on everything known about this Property—including the fact that Dopp has used same as a rental property for the last several years. It is unlawful to claim a homestead exemption when one is not entitled to same.

**24. Second Motion to Disqualify Your Honor (May 5, 2026).** Dopp filed this Motion once again making outlandish and false accusations against Your Honor and undersigned counsel. She then had to refile the Motion because she failed to attach the only exhibit to said Motion. Upon filing, she then submitted false representations to the Clerk and Court that this was an emergency in a

clearly transparent effort to further delay these proceedings and force the Court and JFLP to waste even more time, money, and resources. The Court denied the Motion promptly on May 6, 2026.

**25. Objection to Entry of Proposed Order Granting Cross-Plaintiff's Motion to Consolidate (May 6, 2026).** Dopp filed this "Objection" attacking a proposed Order that undersigned counsel submitted to the Court. Dopp's entire issue with the proposed Order is that it requires consolidated pleadings to be filed in the interest of efficiently adjudicating and processing this case, which Dopp challenges as not having been ruled on during the hearing. Dopp further makes numerous misrepresentations, mischaracterizations, and erroneous personal attacks on undersigned counsel and JFLP. The Court nevertheless subsequently entered an Order Granting the Motion to Consolidate, including the requirement of consolidated pleadings, so that this case can be efficiently and orderly handled.

**26. Motion to Strike Paragraphs 3 and 4 of the May 6, 2026 Order Granting Motion to Consolidate (May 6, 2026).** Dopp then filed this Motion, effectively making many of the same arguments and mischaracterizations described above related to the Order Granting the Motion to Consolidate, along with several other erroneous merit-based claims that have no basis in law or fact.

**27. Notice of Filing Statement Preserving the Record of the May 7, 2026 Hearing on Crossclaim Plaintiff's Motion to Strike the Jury Trial Demand (May 7, 2026).** On May 7, 2026, the Court held a hearing on JFLP's Motion to Strike Dopp's Jury Trial Demand, which the Court granted. Later that day, Dopp filed this purported Notice, challenging the Court's oral pronouncement and making material misrepresentations and mischaracterization about the Court and undersigned counsel, including accusing the Court of mistreatment of Dopp (although she claims not to be doing so). The Court removed this filing from the docket as improper after a hearing on JFLP's Motion to Strike on May 18, 2026.

**28. Notice of Malignment of Dopp and False Characterizations of *Ribaya v. Board of Trustees* to Discredit Dopp (May 8, 2026).** Dopp filed this purported "Notice," once again disparaging undersigned counsel and making material misrepresentations about occurrences at a hearing on April 28, 2026. Here, Dopp takes issue with undersigned counsel properly correcting her misstatement that *Ribaya v. Bd. of Trustees of City Pension Fund for Firefighters & Police Officers in City of Tampa*, 162 So. 3d 348, 352 (Fla. 2d DCA 2015) was no longer good law. In fact, *Ribaya* is good law and stands for the proposition cited in JFLP's Motion to Dismiss. Dopp's Notice is once again a function of either (1) her not understanding terms of art in the legal industry and/or (2) her attempting to force JFLP to incur additional expenses responding to her frivolous filings—most likely, it is both. However, the Court should not countenance this conduct. Dopp further makes improper requests for relief in this so-called Notice, including, but not limited to, "restoring to Ms. Dopp credibility and respect to which a pro se litigant who has accurately quoted binding appellate precedent into the record is entitled."

**29. Notice of Financial Hardship and Inability to Retain Counsel (May 12, 2026).** On April 15, 2026, the Court entered an Order Granting Motion to Withdraw, which required Dopp, within 30 days, to retain new counsel (her withdrawing counsel had not been actively representing her as to the claims of JFLP) or file written notice with the Clerk that she would be representing herself.

Dopp did neither of those things. Instead, she filed this purported Notice, effectively once again challenging the *lis pendens* that both this Court and Judge Thomas have permitted to remain recorded. Dopp further claims that she cannot retain counsel due to financial hardship—without providing any actual support for such claim.

**30. List of Preferred Mediators (May 16, 2026).** On May 12, 2026, the Court entered an Order on Appointment of Mediator, requiring that "each party shall submit a proposed order listing 3 Florida Supreme Court certified civil mediators that are acceptable to them to conduct mediation of this matter" by May 15, 2026, so the Court could appoint one of the 6 proposed mediators. JFLP timely complied with the Court's Order and provided 3 proposed mediators. Dopp failed to comply with the Court's Order, and, instead on May 16, 2026 provided the court with a single proposed mediator. Dopp also mistitled the document "Crossclaim Plaintiff's, Jemison Family Limited Partnership, List of Preferred Mediators," falsely indicating that JFLP untimely submitted the proposed list.

**31. Notice of Filing of Representation of Merits Ruling by the Court by Mr. Litow, Esq of Dec 4, 2025 JFLP Intervention Hearing (May 17, 2026).** Dopp filed this purported Notice to once again launch an improper attack on undersigned counsel and the Court and claim that undersigned counsel has violated the Rules Regulating the Florida Bar. Specifically, Dopp attempts to use an email that undersigned counsel sent her as part of settlement discussions to argue that this Court has "prejudged" this matter and "has shown prejudice to her claims and defenses." Dopp's Notice once again lacks *any* merit whatsoever and demonstrates a fundamental inability to represent herself in these proceedings.

**32. Notice of Filing Statement of Facts Regarding Scheduling and Non-Rulings on the Merits by Judge Thomas, and Transcript Excerpts Demonstrating Mischaracterization at Two Hearings (May 17, 2026).** Dopp filed this purported Notice again attempting to relitigate the propriety of the *lis pendens*. Dopp appears to be arguing that Judge Thomas did not find the *lis pendens* proper—when, in fact, she admits he denied her Motion for Immediate Discharge of the *Lis Pendens*. Dopp further attempts to relitigate the issue of her non-appearance at such hearing, which again Judge Thomas apparently found unpersuasive as he entered the Order after her various challenges at the time.

**33. Verified Second Amended Counterclaims (May 18, 2026).** On May 6, 2026, the Court entered an Order Granting Cross-Plaintiff's Motion to Consolidate Cases, consolidating the two cases and requiring that JFLP file a Consolidated Complaint within 10 days and Dopp to file an answer, affirmative defenses, counterclaims, and any third party complaint 10 days thereafter. Dopp unsurprisingly failed to comply with the Court's Order, instead she filed a 45-page diatribe containing only her purported Counterclaims against JFLP and Third-Party Complaint against Ainsworth & Clancy PLLC. She also expressly defied the Court's Order by filing the document in both this case and the Related Case—despite the matters now being consolidated—further muddying the docket. The purported Counterclaims also fails to correct any of the deficiencies that led to the Court dismissing Dopp's last set of claims. Even more egregiously, Dopp again demanded a jury trial—despite the Court striking her last jury trial demand on May 8, 2026.

**MEMORANDUM OF LAW**

"Abuse of the legal system is a serious matter, one that requires this Court to exercise its inherent authority to prevent." *Lussy v. Fourth Dist. Court of Appeal*, 828 So. 2d 1026, 1027 (Fla. 2002). Indeed, "[t]his Court has a responsibility to ensure every citizen's access to courts." *Id.* (quoting *Rivera v. State*, 728 So. 2d 1165, 1166 (Fla.1998)). To further that end, the Court must prevent "abusive litigants from continuously filing frivolous petitions, thus enabling the Court to devote its finite resources to those who have not abused the system." *Id.* (quoting *Rivera*, 728 So. 2d at 1166).

Accordingly, the Florida Supreme Court has "not hesitated to sanction petitioners who abuse the legal process by requiring them to be represented by counsel in future actions" in appropriate cases. *Id.* The Florida Supreme Court has also found that the Court's inherent authority includes the ability to award attorneys' fees under the inequitable conduct doctrine "where one party has acted vexatiously or in bad faith." *Bitterman v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998). These sanctions encourage the constitutional right of action to all because they permit the Court to devote its finite resources to legitimate claims and arguments. *Lussy*, 828 So. 2d at 1027; *see also May v. Barthet*, 934 So. 2d 1184, 1187 (Fla. 2006).

Numerous Florida courts have sanctioned *pro se* parties who have repeatedly engaged in frivolous or bad faith action by enjoining them from continuing to submit filings without the signature of an attorney licensed by the Florida Bar. In one such case, *Martin v. Marko*, 651 So. 2d 819 (Fla. 4th DCA 1995), the Fourth District observed that the *pro se* petitioner "possesses little interest in prevailing or even in obtaining a decision on the merits. Rather, he has shown a pattern of taking calculated action (or in action) to prevent a review of his claims." *Id.* at 819. The court also noted that "on many occasions [the petitioner] files these pleadings as a means to place into

the public record scandalous personal insults about public figures and his perceived personal enemies while he is clothed with immunity under the judicial privilege." *Id.* at 820. Given the petitioner's bad faith actions, the court concluded that it "has inherent authority to prevent abuse of the judicial system," and ordered that the petitioner, an "abusive litigant[]," could no longer proceed *pro se*. *Id.*

There are many other examples of such sanctions in cases in which a *pro se* litigant acted vexatiously. *See, e.g.*, *May*, 934 So. 2d at 1187 ("This Court and the United States Supreme Court have, when deemed necessary, exercised the inherent judicial authority to sanction an abusive litigant. . . . One justification for such a sanction lies in the protection of the rights of others to timely review of their legitimate filings. . . . [I]n order to preserve the right of access for all litigants and promote the interests of justice, the Clerk of this Court is hereby instructed to reject for filing any future pleadings, petitions, motions, documents, or other filings submitted by George May unless signed by a member in good standing of the Florida Bar."); *Lussy*, 828 So. 2d at 1027 ("Lussy has abused the processes of this Court with his constant filings. Accordingly, a limitation on Lussy's ability to file would further the constitutional right of access because it would permit this Court to devote its finite resources to the consideration of legitimate claims filed by others."); *Lomax v. Reynolds*, 119 So. 3d 562, 565-66 (Fla. 3d DCA 2013) ("Lomax has served as [sic] an unending source of vexatious and meritless litigation both here and below. . . . Therefore we prohibit Lomax from further self-representation in this Court or in the court below."); *Lowery v. Kaplan*, 650 So. 2d 114, 115 (Fla. 4th DCA 1995) ("[T]his court has inherent authority to prevent abuse of the judicial system . . . . This court has in the past successfully denied abusive litigants the right to proceed *pro se*."); *Kreager v. Glickman*, 519 So. 2d 666, 667-68 (Fla. 4th DCA 1988) (enjoining litigant from appearing *pro se* after litigant "repeatedly filed vexatious, baseless, and

harassing law suits in this and other jurisdictions" and "attempt[ed] to relitigate the same issues *ad infinitum*, and . . . fil[ed] voluminous and baseless motions," which "wasted significant time of this Court, thus depriving meritorious litigants of an opportunity to expeditiously resolve their grievances"); *Platel v. Maguire, Voorhis & Wells, P.A.*, 436 So. 2d 303, 304-305 (Fla. 5th DCA 1983) (ordering that litigant could no longer submit filings *pro se*, where litigant "has abused his *pro se* right of access to our court so as to interfere with the effective administration of justice in this court," and observing that "[t]he consequence of Mr. Platel's litigious disposition and apparent lack of legal training is that this court has been inundated with voluminous and, for the most part, incomprehensible documents from him," resulting in the court spending "an unreasonable amount of time and effort attempting to decipher his pleadings, often with no success").

However, before the entry of such sanctions, the Court must afford Dopp with an opportunity to be heard. *See Harris v. Gattie*, 263 So. 3d 829, 831-32 (Fla. 2d DCA 2019) (reversing sanction prohibiting litigant from submitting *pro se* filings where record did not reflect that the lower court provided the litigant with notice or an opportunity to be heard, and remanding so that "the trial court may again consider sanctioning Harris if it provides him with notice of the possibility of sanctions and an opportunity to be heard"); *Delgado v. Hearn*, 805 So. 2d 1017, 1018 (Fla. 2d DCA 2001) ("While it is clear that a litigant's right to access the courts may be restricted upon a showing of egregious abuse of the judicial process, . . . due process requires that courts first provide notice and an opportunity to respond.") (reversing for issuance of order to show cause why sanctions should not be imposed). Therefore, the Court should issue an Order to Show Cause requiring Dopp to show why she should not be sanctioned and set a hearing on the same.

At the show cause hearing, the Court should consider the following factors in determining whether to sanction Dopp by prohibiting her from continuing to file documents without representation of counsel:

> [I]n determining whether or not to restrict a litigant's future access to the courts, [a court] should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Sibley v. Sibley*, 885 So. 2d 980, 985-86 (Fla. 3d DCA 2004) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). As discussed below, these factors overwhelmingly weigh in favor of sanctioning Dopp by prohibiting her from continuing with her *pro se* filings.

## I. DOPP IS A VEXATIOUS LITIGANT

Here, Dopp's conduct squarely qualifies her as a vexatious litigant. Since January 2026, Dopp has filed in excess of thirty substantive motions, pleadings, and filings—virtually all of which have been denied, dismissed, or are so patently frivolous and without merit that they are *contradicted* by Dopp's own arguments and documents. She has repeatedly filed unmeritorious voluminous documents challenging, *inter alia*, (1) the *lis pendens* recorded related to this action, (2) the Court's handling of these proceedings and purported treatment of Dopp, (3) the transfer of the Related Case to this division, (4) undersigned counsel's efforts to move this case forward in accordance with the Court's deadlines, (5) JFLP's discovery requests, and (6) the consolidation of this case and the Related Case. Her filings have included citations to fabricated cases, hallucinated statutory text, impermissible shotgun pleadings, *ad hominem* attacks on the Court and undersigned counsel, and contradictory arguments—hallmarks of frivolous and unmeritorious filings and clear

abuses of the Court system. Indeed, despite both this Court and Judge Thomas finding that the *lis pendens* recorded in relation to this action was proper, Dopp has continued to challenge same. She has also improperly and repeatedly challenged the Court's ruling on JFLP's discovery requests, under the guise of a "Notice Preserving the Record," despite the Court already ruling on this issue. She has continuously filed unsound and disparaging Notices in the record, personally attacking undersigned counsel and this Court. In short, Dopp's filings, arguments, and requests for relief are unquestionably repetitive, unmeritorious, and designed to cause unnecessary delay and undue expense for the Court and JFLP.

Dopp has also systematically obstructed JFLP's ability to schedule hearings and advance the litigation, including by failing to respond to scheduling requests and using purported settlement discussions as a shield against any forward progress. Yet, Dopp herself has simultaneously and improperly unilaterally set hearings without any conferral with undersigned counsel, set hearings on matters *already previously set* for hearing by undersigned counsel, and set hearings in violations of Fla. R. Civ. P. 1.510. Dopp has also threatened the filing of bar complaints against undersigned counsel and suggested she intends to file various appeals in a transparent effort to prolong and delay these proceedings.

Dopp is the prototypical vexatious litigant attempting to throw anything and everything at the wall to gain leverage in a situation where she has none. Her conduct has placed a substantial and unnecessary burden on the Court and JFLP. These are the exact circumstances that warrant sanctions against a *pro se* litigant.

## II. DOPP HAS NO GOOD FAITH BASIS EXPECTATION OF PREVAILING ON THE MERITS OF THIS ACTION

This is a straightforward case. Dopp agreed to a business loan of $185,000 from JFLP expressly secured by three properties, including the properties underlying this action. Dopp failed

to repay the loan upon maturity. Accordingly, JFLP is entitled to an equitable mortgage and foreclosure of said mortgage on the Property. Dopp has not brought forth a single legitimate defense to JFLP's claim, nor any legitimate counterclaims. In fact, the Court recently dismissed her most recent Counterclaims, finding that Dopp failed to state any cause of action against JFLP. Her most recent attempt at repleading those claims equally lack merit and are due to be dismissed with prejudice. Accordingly, Dopp has no good faith basis to believe she will prevail in this case.

## III. DOPP IS NOT REPRESENTED BY COUNSEL

It is undisputed that Dopp is *pro se* and has acted *pro se* as to JFLP's claims since February 2026.[2]

## IV. DOPP HAS CAUSED NEEDLESS EXPENSE TO JFLP AND HAS POSED AN UNNECESSARY BURDEN ON THE COURT AND ITS PERSONNEL

As demonstrated by the Court's consistent denial and rejection of Dopp's arguments, Dopp has lacked a legitimate basis for her pleadings, motions, notices, and other filings. However, given the false and inflammatory content of Dopp's filings, not to mention the procedural necessity of addressing all pending motions prior to the entry of judgment, JFLP has been forced to respond to each of Dopp's filings. Furthermore, the Court no doubt spent significant time reviewing Dopp's various filings before hearings and has certainly spent a disproportionate amount of time presiding over hearings in this case. Additionally, Dopp has continuously directly contacted the Court and the Court's personnel via email to further attack the Court and undersigned counsel and attempt to

[2] Michael Cotzen, Esq. represented Dopp as to the claims by PNC and sometimes as to JFLP's claims, but Dopp advised in early February 2026 that she was representing herself *pro se* as to JFLP's claims. Cotzen formally withdrew from the case with leave of Court on April 15, 2026.

relitigate matters the Court has already decided. Therefore, the Court should find that Dopp has caused needless expense to JFLP and posed an unnecessary burden on the Court.[3]

## V. NO OTHER SANCTIONS WOULD BE ADEQUATE TO PROTECT THE COURT OR JFLP

The Court should find that sanctions other than restricting Dopp from continuing to file documents *pro se* before this Court would be insufficient to protect JFLP and the Court. Dopp has repeatedly demonstrated a disregard for the Court's rules and prior orders and has taken every opportunity to delay and prolong these proceedings and force JFLP and the Court to waste their precious resources addressing Dopp's frivolous filings. Furthermore, while JFLP seeks to recover attorneys' fees spent in bringing this Motion, it is unlikely that a monetary award would deter Dopp from future frivolous filings, particularly given that Dopp has filed multiple documents claiming she has no funds and no assets.

To conclude this case, Dopp must be required to submit any further filings before this Court through an attorney licensed by the Florida Bar. To be precise, JFLP seeks such an injunction against Dopp not only in this action, but in any action before the Courts of this jurisdiction. Sanctions short of this will no doubt result in continued frivolous filings by Dopp and a costly delay in resolving these proceedings.

---

[3] This is not the only case where Dopp has represented herself *pro se* and been an unnecessary burden on the Court. For example, Dopp filed a lawsuit against Guetty Felin (Miami-Dade Case No. 2024-180619-CC-05), where the Court was forced to hold a hearing of Dopp's failure to prosecute and ultimately resulted in a dismissal of the case due to same. Dopp has likewise engaged in similar vexatious conduct relating to one of the same properties at issue in this case with a different plaintiff, Visual Production Group, LLC (Miami-Dade Case No. 2025-004185-CA-01), over which Your Honor is also presiding. Dopp has further filed a lawsuit against PNC Bank, NA (Miami-Dade Case No. 2026-001512-CA-01) on January 23, 2026, and she still has not even had a summons issued.

## CONCLUSION

The Court should issue an order requiring Dopp to show cause why she should not be sanctioned for her repeated baseless filings by restricting Dopp from continuing to act *pro se* in filing documents before this Court and requiring her to pay JFLP's attorneys' fees in bringing this Motion.

WHEREFORE, JFLP respectfully requests that the Court issue an Order to Show Cause requiring Dopp to appear and show cause why she should not be sanctioned through a restriction on her ability to continue filing documents *pro se* before this Court and an award of attorneys' fees and provide any other and further relief as the Court deems necessary and proper.

DATE: May 20, 2026.

Respectfully submitted,

*/s/ Laurence S. Litow*

**Laurence S. Litow, Esq. (FL Bar No. 328758)**
Andrew T. Sarangoulis, Esq. (FL Bar No. 1002608)
BURR & FORMAN LLP
200 E. Broward Blvd., Suite 1020
Ft. Lauderdale, FL 33301
Telephone: (954) 414-6222
Facsimile: (954) 414-6201
Email: lslitow@burr.com
Email: asarangoulis@burr.com
Email: rzamora@burr.com

*Counsel for Crossclaim Plaintiff*
JEMISON FAMILY LIMITED PARTNERSHIP

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 20, 2026, I electronically filed the foregoing with the Clerk of Court by using the Florida Eportal, which will send an electronic service copy to:

Cheryl Anne Dopp
799 NE 70th Street
Miami, FL 33138
Email: cad80203@yahoo.com

*/s/ Laurence S. Litow*
Laurence S. Litow, Esq. (FL Bar No. 328758)
BURR & FORMAN LLP